## Kurtz *versus* Saylor.

1. A will by a married woman, made on the 4th April, 1833, was, by the 16th section of the Act of 8th April, 1833, relating to wills, revoked by her subsequent marriage in 1834.

2. A codicil in 1841 was a republication of the will, and revived its legal effect, if it had any by her possessing authority to make it.

3. But a will made in 1833, if invalid for such want of authority, was not validated by the Act of 1848 passed during her lifetime. Her right to make a will was to be determined by the law as it existed *when the will was made*, and not as it was *at the time of her death.*

4. By the Act of 8th April, 1833, a married woman, with the assent or license of her husband, may dispose of her *personal* estate by will. But a general license *to make a will* is not sufficient; it must be a special authority to make the will in question.

ERROR to the Common Pleas of *Montgomery county*.

There were two issues formed in the Court below, upon the precept of the Register of Montgomery county, to try the validity of the will and codicil of Catharine Saylor, deceased, formerly Catharine Smith. In the issues Samuel Kurtz and others were plaintiffs, and Godfrey Saylor was defendant.

The testatrix was twice married. After the death of her first husband, she was possessed of considerable real and personal estate in her own right; and, on the 4th April, 1833, while she was still a widow, she executed *the will* in dispute.

On the 9th February, 1834, the testatrix was married to Godfrey Saylor, the defendant. On the 5th May, 1841, the testatrix executed *the codicil* in dispute. To both the will and codicil she put *her mark* instead of her name. In the will she directed her real and personal estate to be sold and the proceeds distributed. In the codicil the distribution was altered. It was provided in the codicil that it be annexed to and made a part of the will aforesaid. The testatrix died in the month of September, 1849, leaving her husband, Godfrey Saylor, still living.

The plaintiffs, to sustain the will and codicil, offered evidence in the Court below of the contents of a written contract executed between the testatrix and the defendant prior to their marriage, which, it was contended, authorized her to dispose of her real estate by will, the instrument itself having been destroyed, after marriage, by the defendant.

The plaintiffs further gave evidence to show that the defendant had, subsequently to his said marriage, a second time given his consent to the testatrix's authority to make *a will*, for which he received, as a consideration, the half of the proceeds of the sale of certain real estate belonging to the said testatrix, and that

S

[Kurtz *v.* Saylor.]

during marriage he always treated his wife's property as her separate estate.

By the second section of the Act of 8th April, 1833, it was enacted, that a married woman may, *under a power legally created for the purpose,* dispose of her real and personal estate by will, or appointment in nature of a will; and that any married woman may, with the assent or license of her husband, dispose of her personal estate by will.

Sect. 16. A will executed by a single woman shall be deemed revoked by her subsequent marriage, and shall not be revived by the death of her husband.

In the seventh section of the Act of 1848 it is enacted that "any married woman may dispose, by her last will and testament, of her separate property, real, personal, or mixed, whether the same accrue to her before or during coverture: provided, that the said last will and testament be executed in the presence of two or more witnesses, neither of whom shall be her husband."

KRAUSE, J., charged, *inter alia* :—

" If the marriage was after the date of the will, the instrument was revoked by the 16th section of the Act of 1833, or by the law as it stood before. She, however, made a codicil, dated 5th May, 1841, as it would seem, after her marriage; and if she had legal capacity then to do so, that would be a republication of her former will, and make both one valid instrument. But by the Act of 1833 she had no such capacity, if she was then a married woman, unless a power for such purpose was legally created for her so to dispose of her estate. The provision in her favor is, ' that a married woman may, under a power legally created for the purpose, dispose of her real or personal estate by will, or appointment in nature of a will; and that any married woman may, with the assent or license of her husband, dispose of her personal estate by will.' Consequently, the jury will look to the testimony for the facts on this point, to see whether a power legally created for her, for such purpose, is shown; or whether she made her codicil by the assent or license of her husband, as respects her personal estate. The power, however, which is sufficient to dispose of her real and personal estate by will, or appointment in the nature of a will, must be an express one, and cannot be implied from a general right at the time, by a marriage contract, or otherwise, to control or alien her property. It must be an express power to dispose of it by will or appointment. And as it regards her personal estate, *the assent or license of her husband must not be general to make a will, but the will in question.* So the Court instructs the jury on the Act of 1833.

" But the plaintiffs insist, that by force of the Act of 1848, in relation to the rights of married women, which it is said is retroactive in its operation, these instruments must be sustained as tes-

[Kurtz *v.* Saylor.]

tamentary dispositions of her property. That act, however, has no such retrospect. It is specially restricted to property owned by or belonging to *single women*—such shall continue to be theirs as fully after their marriage as before; and next, to such as shall accrue to a married woman during coverture. Both provisions are plainly prospective from the date of the statute; and, therefore, if the jury find the property involved to have belonged to the testatrix before the date of said Act, or not to have accrued to her during her coverture, after the date of said Act, none of its provisions will sustain these papers as valid, either as will or codicil.

"But the plaintiffs affirm, again, that there was a marriage contract, and rely on that for power in the testatrix to dispose of the property in question by will. There is evidence of such contract in the testimony of more than one witness. If such contract was made before or after the marriage, giving to the testatrix an express power to make a will, or an appointment in the nature of a will, or such assent to dispose of her personal property, *as before stated*, these instruments are good; otherwise they cannot be held valid on this ground."

November 25, 1850, verdict was rendered in favor of defendant.

It was assigned for error, 1. The Court erred in charging the jury that the Act of 11th of April, 1848, does not apply to the case; and in their construction of that Act.

2. The Court erred in charging the jury that, as respects this personal estate of the wife, the assent or license of the husband *must not be general* to make *a will*, but *the* will in question.

*Mulvany* and *Boyer*, for plaintiffs in error.—It was contended that, as the will of the testatrix was not consummated by her death, when the Act of 1848 passed, such Act operated so as to validate the will, irrespective of any contract or assent on the part of her husband, or of any special power created for the purpose, as respected the portion of her estate which had not been reduced into possession by her husband: 1 *Jones* 489, Greenough *v.* Greenough; *Id.* 272; 1 *Harris* 480, Goodyear *v.* Rumbaugh.

As to the second specification, it was alleged that, if a general permission by the husband to make a will was not sufficient, then, no matter what consideration he had received from his wife, he might, after her death, repudiate his contract, unless it could be shown that she had obtained his sanction to it. That thus it would be substantially *his* will, and not the will of his wife. That he could not so repudiate his agreement, the case of Gackenbach *v.* Brouse, 4 *W. & Ser.* 546, was referred to. Also 7 *Barr* 411, Wagner *v.* Ellis; 8 *W. & Ser.* 413; *Id.* 102; 5 *Barr* 154.

[Kurtz *v.* Saylor.]

*Hobart* and *Fornance*, for defendant in error.—The will of the testatrix was executed four days before the Act of 8th April, 1833, was passed. It is however contended, on the part of the plaintiffs, that the codicil made in 1841 amounted to a republication of the will.

It was contended that the Act of April, 1848, was not retroactive, but altogether *prospective;* reference was made to the case of Greenough *v.* Greenough, 1 *Jones* 489, and to the opinion in Snyder *v.* Bull, 5 *Harris* 58. It was contended that, where an act or proceeding is commenced during the pendency of one law, but not consummated until after the law is changed, the first law is to control the proceedings; and the Court should refuse to give a retroactive operation to statutes, where not compelled by direct and positive words. That the rule is to permit retrospective operation to statutes which operate on *the remedy, but not on the right:* 10 *Barr* 505; 4 *Ser. & R.* 401; 3 *Harris* 479, Martindale *v.* Warner; 5 *W. & Ser.* 198.

It was further stated, that the plaintiffs offered evidence of an antenuptial contract, which had been in some way destroyed or lost; but that it appeared from the evidence that *it gave no power to make a will,* but the object of said agreement was that their separate property should be enjoyed together during life, and, after the death of either, then to be enjoyed by the survivor.

The plaintiffs' counsel then offered to prove that, subsequent to marriage, the defendant gave his consent to the testatrix's authority to make a will. But the witness called by plaintiff stated that he bought a property in 1846 or 1847 from her for $2000; that he told the defendant, and asked him if he was satisfied; defendant said he was, if he would get $1000 of the purchase-money, and his wife said she was willing, *provided she should do with the rest of her money as she pleased;* that certain bonds and mortgages were mentioned, and witness further said he thought the thing was fairly understood.

Upon this evidence the Court instructed the jury that, under the Act of 1833, "*the assent or license of her husband must not be general, to make a will, but to make the will in question.*" It was contended that this was the law of Pennsylvania.

The will purported to dispose of her *real* as well as personal estate. The husband was not the heir to the testatrix as to her real estate; and he could not give his wife power to make a will in prejudice of the heir at law; but he could have given her power to dispose of *her personal estate:* 7 *Barr* 411, Wagner *v.* Ellis; 10 *Ser. & R.* 445. In the Act of 1833 the same distinction is made, as to the power of a married woman to dispose of her real estate, and to dispose of her *personal* estate alone. But the consent of the husband must be given *to the particular will in question;* the *previous* assent of her husband is not sufficient: *Lovelass*

[Kurtz v. Saylor.]

*on Wills* 266; 2 *East* 552; 15 *Ves.* 139, Stephens *v.* Bagwell. In this case it was necessary, in order that the will be valid, that there had been the direct assent of the husband to the will, or an express power legally created for the purpose.

The opinion of the Court was delivered, May 17, 1852, by

BLACK, C. J.—This case depends on the right of Catharine Saylor to make a will; not on the question what property the will would pass. She might make a valid will, and the executor could take nothing under it for want of title in the testatrix; or she might be entitled to large possessions in her own right, and die intestate, because she had no power to make a will.

The points of law involved in the cause may be stated briefly in the following propositions:—

1. The original will, which was made in 1833, is to be taken as revoked by her subsequent marriage (which took place in 1834), agreeably to sec. 16 of the general act relating to wills.

2. The codicil of 1841 was a republication of the will, and revived its legal force, if she had authority to dispose of her property by last will and testament at that time.

3. She had no such authority by the act of 1848, because it was not then passed, and her right to make a will is to be determined by the law as it stood then, and not by the statutes in force at the time of her death. This is decided in Mullen *v.* McKelvy, 5 *W.* 399; see also *Dwarris on Stat.* 685.

4. We must therefore fall back on the act of 1833, the only one which was in force at the date of the will; and this act, in sec. 3, provides that a married woman may, by the assent or license of her husband, dispose of her personal estate by will.

5. The evidence proved the consent of the husband that the wife might do as she pleased with the rest of her property if he got $1000. This is no more than a mere general license to make a will, even if it amounts to that.

6. But a general license to make a will is not sufficient. It must be a special authority to make the particular will in question. This we consider the natural meaning of the act, and is in accordance with the construction given to similar statutes elsewhere: *Lovelass on Wills* 266; 2 *East* 552; 15 *Vesey* 139.

7. It follows that this will is void for want of power to make it; that there is no error in the record; and that the judgment is to be affirmed.

Judgment affirmed.