# In re Opening of Spring Street in the City of Reading.

1. The Court of Quarter Sessions has no power to award the common law writ of mandamus; but it may enforce its own judgments, in regard to the payment of land damages, for the opening of streets.

2. Since the Act of May 23d, 1874, dividing cities into three classes, etc., proceedings for the assessment of damages for the opening of streets in cities of the third class should be commenced in the Common Pleas.

3. Where a city of the third class instituted proceedings in the Quarter Sessions for the opening of a street and the assessment of damages caused thereby, under which the damages were assessed and the land taken without exception on part of the land owners, the municipality will not be permitted to raise the question of the jurisdiction of the Quarter Sessions to avoid paying the damages assessed for the land taken.

4. While the consent of the parties could not give jurisdiction to the Quarter Sessions in the matter of opening streets and assessing damages therefor; yet the general jurisdiction of said court over this matter is sufficient to bind a municipality invoking that general jurisdiction for the payment of land damages assessed for the opening of a street.

March 3d, 1886.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to the Court of Quarter Sessions of the Peace, of *Berks county:* Of January Term, 1886, No. 134.

This was a *certiorari* issued at the instance of the city of Reading from the order, judgment and decree of the Court of Quarter Sessions of Berks county, wherein and whereby the said court awarded a writ of peremptory mandamus or mandatory execution against the councils of the city of Reading, or their successors in office, requiring them or their successors to make ample provision for the payment of the sum of twenty-three hundred and fifty dollars, ($2,350) damages awarded Angeline Mohr and Ellen Spohn, in the opening of Spring street, in the city of Reading, with interest from April 15th, 1885, the date of absolute confirmation, and costs.

On the 8th day of September, 1884, the Select and Common councils of the city of Reading passed a resolution authorizing the City Solicitor to apply to court for viewers to open Spring street, from Third to McKnight street, in the city of Reading. The record showed the following:

The City Solicitor, on September 20th, 1884, presented his petition to the Court of Quarter Sessions, whereupon the court appointed six viewers, and the same day an order issued to them.

On the 14th of October, 1884, the viewers reported in favor of opening said street, and awarded as damages to Ellen Spohn the sum of $1,516.66⅔, and to Angeline Mohr the sum of $833.33⅓.

On January 14th, 1885, the report of viewers was confirmed *nisi.*

On April 15th, 1885, the report of viewers was confirmed absolutely.

On May 13th, 1885, an order to open issued to the Highway Commissioner.

On 12th day of August, 1885, Angeline Mohr and Ellen Spohn, by G. B. Stevens Esq., presented a petition to the Court of Quarter Sessions for a writ of alternative mandamus.

On August 31st, 1885, the city filed an answer thereto.

October 15th, 1885, Highway Commissioner returned street opened.

On November 2d, 1885, the Court of Quarter Sessions, in

[In re Opening of Spring Street.]

an opinion filed by SASSAMAN, J., awarded a writ of peremptory mandamus against the city of Reading, whereby the said court peremptorily commanded the councils of the city of Reading, or their successors in office, to provide for the payment of the sum of $2,350 to Ellen Spohn and Angeline Mohr, with interest from April 15th, 1885, and costs.

The city of Reading thereupon took this writ and filed the following assignments of error :—

1. The court below erred in taking cognizance of the proceedings in this case.

2. The court below erred in entering judgment in favor of the relators.

3. The court below erred in awarding a peremptory writ of mandamus against the city of Reading, respondent.

4. The court below erred in making the following decree :

And now to wit : November 2d, 1885. It is ordered and adjudged that the city councils of the city of Reading, the respondents in this case, and their successors in office, be and they are hereby commanded to make full and ample provision for the payment of the damages awarded to Ellen Spohn and Angeline Mohr, with interest from date of absolute confirmation of the report of viewers, and the costs of these proceedings.

5. The court below erred in not entering judgment against the said Angeline Mohr and Ellen Spohn, with costs.

*William J. Rourke*, City Solicitor, for plaintiff in error.— Sec. 20, clauses 38 and 39, Act of 23d of May, 1874, P. L., 230, vest in the councils of the city of Reading full power and authority to open any street, without the intervention of the Court of Quarter Sessions, whose jurisdiction is thereby virtually ousted, because their jurisdiction is purely statutory : Kroemer *v.* Com'th, 3 Binney, 583 ; Church Road, 5 W. & S., 201 ; Liberty Alley, 8 Barr, 382 ; *In re* Chestnut Street, 5 W. N. C., 237 ; and when the city of Reading accepted the provisions of the Act of May 23d, 1874, it fell as a matter of course : *In re* Jackson Street, 2 Norris, 328.

The appellees contend that when the proceeding was confirmed absolutely there was a final judgment for the amount of damages assessed in their favor. There was simply a final order for the opening of the street, because there the jurisdiction, if they had any at all, ended : *In re* 28th St., 6 Out., 140. But there never was a judgment definitive, or otherwise, against the city of Reading, because the Quarter Sessions never had, either before or since the passage of the Act of 1874, any power or authority, by enactment of the Legislature, to enter a judgment against the city for one cent for damages in taking lands in opening streets. If the Legislature had intended to con-

fer any such power on the Court of Quarter Sessions in assessing damages against a city, the least they could have done would have been to have made the jurisdiction of Quarter Sessions co-ordinate and co-extensive with that of the Common Pleas. But not having done so, the Quarter Sessions is wanting in power to enter a judgment against said city. If they cannot enter a judgment, it is as clear as the noon-day sun that they cannot enforce it. The cases of Borough of New Brighton v. United Presbyterian Church, 15 Norris, 331, and Cummings v. City of Williamsport, 3 Norris, 472, are totally inapplicable for the purposes of this case. Because both of those cases were in the Common Pleas, whereas the appellees in this case were never out of the Quarter Sessions, and never in the Common Pleas, and consequently jurisdiction cannot attach as against the city, and the judgment final, or otherwise, can in no way affect her.

It cannot be said, in the face of the well established principle of the law, that jurisdiction cannot be given by consent, that the municipal authorities are bound by the judgment of the Court of Quarter Sessions and its record in the pending case: Maxwell v. Levy, 2 D., 381; Resp. v. Cobbett, 3 D., 467; Stoy v. Yost, 12 S. & R., 385; McKee & Lanford, 1 C., 105; Oil City v. McAboy, 24 S., 249.

*G. B. Stevens*, for defendants in error.—The Court of Quarter Sessions is generally the tribunal from which all roads and streets emanate, and in counties embracing cities within their territory, it is not remarkable that there should be some confusion incident to the adoption of a new process, and in fact it is a question whether the jurisdiction of that court is not concurrent with that of city councils, as was held in The Opening of 28th Street, 6 Outerbridge, 140, and the comity of the courts would certainly justify the action of our court below, in their allowances of the several prayers of the appellants in this proceeding. In the cases of Borough of New Britain, 13 Norris, 331, and Cummings v. The City of Williamsport, 3 Norris, 472; Park Avenue, Meadville, 2 Norris, 167, and other cases cited, in the opinion of the court below, the proceedings all initiated since the passage of the Act of 1874, were begun in the Quarter Sessions, and the anomalous condition of affairs here would seem to require some definite instructions. For eleven years the city of Reading has flooded the Quarter Sessions with petitions of this character, and have avoided a decision on the questions as to the proper practice as well as to the city's liability for damages.

What is the landowner to do under the present condition of affairs, when the city shall come into the Court of Quarter

Sessions and obtain an appointment of viewers to assess damages? He is not in court until the report is filed, if he is not satisfied with the award, he may appeal, but if he is satisfied with the award, must he nevertheless appeal?

: We think the court below states the matter properly. " The city did not appeal, and on its own motion there was judgment against it to settle a disputed question of damages for taking lands. The judgment is final. . . . . . As between the parties, the solemn judgment of a court, which they invited, is not void. A judgment of the Court of Quarter Sessions is equally effective with the final judgment of any other court."

This is better said by Justice PAXSON in the Sedgely Avenue Case, 7 Norris, page 513, and since it is held to be immaterial whether the writ *ad quod damnum* issue from one court or the other, and by means of the Act of 13th June, 1874, P. L., 283, is so readily removed from the Quarter Sessions to the Common Pleas, it does seem that it should remain with the landowner to elect whether he should appeal or not.

Mr. Justice PAXSON delivered the opinion of the court, April 12th, 1886.

This proceeding was had under the Act of 26th April, 1864, P. L., 601, which conferred upon the Court of Quarter Sessions of Berks county the power of appointing viewers to assess the damages for opening streets in the city of Reading. The Act also provides that the damages when assessed shall be paid by the county of Berks.

. The viewers were appointed upon the application of the municipal authorities of the city of Reading. They assessed damages in favor of Ellen Spohn to the amount of $1,516.66, and in favor of Angeline Mohr to the amount of $833.33. The report of the viewers has been confirmed absolutely by the Court of Quarter Sessions without any objection on the part of either of the persons in whose favor the award was made. Their land has been since taken and the street opened. The city now refuses to pay, whereupon the court below issues a peremptory mandamus, commanding the city to provide for the payment of the amounts awarded by the viewers, to which writ this *certiorari* was taken.

The Court of Quarter Sessions has no power to award the common law writ of mandamus. *In re* Sedgley Avenue, 88 Penn. St. Rep., 509. But as was said in that case it may enforce its own judgments in regard to the payment of land damages for the opening of streets. I do not regard the objection in this case as being based upon the form of the order any more than it was in Sedgley Avenue. The objection lies deeper.

[In re Opening of Spring Street.]

In August, 1874, the city of Reading brought itself under the provisions of the Act of May 23d, 1874, entitled, " An Act dividing the cities of this state into three classes, etc., and providing for the incorporation and government of the third class." It now holds its charter under said Act, and its former charter has been abrogated. By clause 38 of section 20 of said Act the councils of said city are empowered " To open, widen, or otherwise improve or vacate any street, avenue, alley or lane within the limits of the city, and also to create, open and improve any new street, avenue, alley or lane "; and by the 39th clause of said section, " To create, open, widen or extend any street, avenue, lane or alley, or annul, vacate or discontinue the same whenever deemed expedient for the public good." P. L., 233 and 243. If this were all it might well be a question whether the jurisdiction of the Quarter Sessions was ousted by the Act of 1874. But the 53d section of said Act provides : " That in *all* cases in which, under the provisions of .this Act, either in the opening or widening of streets, . . . . . the said city cannot agree with the owner or owners thereof for the compensation proper for the damage done or likely to be done to or sustained by any such owner or owners of such land or materials which said city may enter upon, use, etc., . . . . . the Court of Common Pleas of the proper county, on application thereto by petition, either by said city or owner or owners, or any one on behalf of either, *shall* appoint seven discreet and disinterested freeholders of the proper county " to assess the damages which such owner has sustained by reason of the taking of his land, etc., which damages when so assessed shall become a judgment of said court and shall be paid by said city.

It was conceded by the court below, and is not denied by any one, that the proceedings were irregular, for the reason that since the Act of 1874, proceedings for the assessment of damages for the opening of streets in the city of Reading should be commenced in the Common Pleas. It is equally clear that had the property owners come in at any stage and objected to the want of jurisdiction, the objection would have been fatal. But they did not object then nor do they object now. The point is taken by the city which instituted these proceedings ; prosecuted them to final judgment, and has opened the streets and appropriated the land of the property owners. It is an ungracious defence and not creditable to the municipal authorities of the city.

We do not regard the defence as well taken. While it is conceded as a general rule that consent will not give jurisdiction, yet we are not to lose sight of the fact that the Court of Quarter Sessions has a general jurisdiction over the opening

of streets and the assessment of damages therefor. And while in the particular portion of territory embraced within the city of Reading that jurisdiction has been transferred to the Court of Common Pleas, the fact remains that the city not only consented to but invoked the jurisdiction of a court having such general jurisdiction, and having now obtained the fruits of their proceeding, it does not lie in the mouth of the municipality to raise such an objection as this. Had the parties consented to the jurisdiction of a court having no general control of such matters, as, for instance, the Orphans' Court, the proceedings would have been absolutely void, and no consent of either party would have worked an estoppel. But as the case stands we are of opinion that good faith and fair dealing alike require the city to pay their awards, and to this end the proceedings below are

Affirmed.