## DANIEL SHAABER v. CITY OF READING.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 5, 1890—Decided March 31, 1890.
[To be reported.]

(*a*) Prior to 1874, the opening of streets in the city of Reading was governed by the act of April 26, 1864, P. L. 583, and that of April 13, 1868, P. L. 1056, under which acts the necessity for opening a street and the damages resulting to property owners were passed upon by the same board of viewers, appointed by the Court of Quarter Sessions:

1. By the act of May 23, 1874, P. L. 230, under which that city became a city of the third class, the jurisdiction of the Court of Quarter Sessions as to opening streets therein was not taken away, but was left to be exercised, in all cases where proceedings to open are conducted at the instance of private persons, and in all other cases in which the city elects to invoke it, precisely as before the city came under that act.

2. But, whenever the city elects to exercise the new power to open a street without the supervisory control of the Court of Quarter Sessions, conferred on cities of the third class by the act of 1874, or to appropriate private property thereunder for the purposes of gas or water supply or other municipal objects, compensation to the owner must be secured and adjusted solely through the Court of Common Pleas.

3.  The provisions of the act of 1874 empowering cities of the third class
to determine for themselves the question of opening streets, and to ap-
propriate land for that purpose, directing that the damages arising to
landowners therefrom shall be assessed by proceedings in the Court of
Common Pleas, and authorizing the approval by said court of security
for such damages, are not unconstitutional: Ruan Street, 132 Pa. 257,
distinguished.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and
MITCHELL, JJ.

No. 304 January Term 1890, Sup. Ct.; court below, No. 482
Equity D. 1889, C. P.

On October 7, 1889, Daniel Shaaber filed a bill in equity
against the city of Reading, averring that in 1878 the plaint-
iff erected a large building on ground leased by him from
the Philadelphia and Reading Railroad Company, and had
since occupied and used the same for business purposes; that
said building was situated wholly or in part within the lines
of Fifth street as laid down upon the topographical survey of
the city, but that portion of said street had never been opened
or used by the public; that said city was incorporated by the
act of March 16, 1847, P. L. 409, and was governed by its pro-
visions, and those of the acts of April 26, 1864, P. L. 583,
April 13, 1868, P. L. 1056, and May 23, 1874, P. L. 230, until
the passage of the act of May 23, 1889, P. L. 277; that under
the provisions of said acts of 1864 and 1868, streets in said
city were opened by decree of the Court of Quarter Sessions
after a report of viewers appointed upon the city's application,
and by § 13 of said act of 1874, as amended by act of June 8,
1881, P. L. 68, it was provided that such proceedings should
be had in cases of opening, etc., of streets " as are now required
by law," and that cities may, with the consent of the courts of
Quarter Sessions, enter security for damages to private prop-
erty by reason of street improvements, in such sum or sums as
said court may direct; that on March 14, 1888, the mayor of
said city approved an ordinance passed by the councils, au-
thorizing the opening of a part of Fifth street, but no viewers
had been appointed to report upon its opening, no decree had
been made by the Court of Quarter Sessions respecting the
same, and no security for damages to the plaintiff had been

entered with the consent of the Court of Quarter Sessions; that in disregard of law the said city was about to open said street through the plaintiff's property and tear down his building; praying for an injunction and for general relief.

Upon the filing of the bill a preliminary injunction was awarded thereon, which, after argument of a motion for its continuance, the court, ERMENTROUT, P. J., dissolved, filing an opinion in part as follows:

By proper lawful action, under § 57 of the Municipal Act of May 23, 1874, the city of Reading accepted the provisions of the act, and by such acceptance relinquished all charter rights, powers, privileges, and franchises previously acquired that were inconsistent with its provisions.

Prior to this acceptance, when councils desired a street to be opened, the city solicitor presented to the Court of Quarter Sessions the necessary application made by joint resolution of the select and common councils, whereupon six disinterested freeholders, not residents or property holders of the city, were appointed to report upon the necessity of opening, and also at the same time to assess the damages. The act of April 13, 1866, P. L. 1056, is clear upon the subject.

But the Municipal Act of 1874, § 20, clauses, 2, 38, 39, gives the city power to enact ordinances for the following purposes, viz.: to create, open, widen, extend, improve or vacate streets, avenues, lanes, or alleys within the city, and this is to be done, in the express language of the clause, "whenever deemed expedient for the public good." This power is in the most complete general terms, the exercise of it depending solely upon the wise discretion of the city authorities. The plain, obvious construction of the clause, is that the city authorities are to be the judge of what is "deemed expedient for the public good." Sections 53, 54, and 55, provide how damages are to be assessed and paid; how viewers are appointed, and the course to be taken when it is necessary to tender bonds, with sureties, to the party claiming damages, when unable to agree with the city. These various sections furnish a complete system for the opening of streets and the assessment of damages. All the proceedings with regard to the assessment of damages shall be carried on in the Court of Common Pleas.

Opinion of Court below.

The new system is radically different from the old. The two systems are totally repugnant and inconsistent. So far as the method of assessing the damages is concerned, the question was practically decided in Spring St., 112 Pa. 263, wherein Justice PAXSON held that "since the act of 1874, proceedings for the assessment of damages for the opening of streets, in the city of Reading, should be commenced in the Court of Common Pleas." It is contended that this decision does not extend beyond the mere assessment of damages, and that, under the old law, the Court of Quarter Sessions has still concurrent jurisdiction with city councils in the matter of opening. But the power given the city to open " where deemed necessary for the public good," is totally inconsistent with the authority given viewers in the act of 1868 to report to the Court of Quarter Sessions " whether in their opinion, the state of improvements, or other necessities in the neighborhood of the street, require the opening of the same;" and, being so inconsistent, the provisions of the act of 1868 are repealed by implication: Ætna Ins. Co. v. Reading, 119 Pa. 417.

It is also contended that § 13 of the act of 1874, P. L. 238, retains the old law in force. It provides " that the municipal authorities and courts having jurisdiction in any city of this commonwealth shall have exclusive control and direction of the opening, widening, narrowing, vacating and changing grades of all streets, alleys and highways within the limits of such city, and may open or widen streets of such width as may be deemed necessary by such authorities and courts, proceedings to be had in such cases as are now required by law."

If this § 13 is irreconcilably in conflict with §§ 20, 53, 54, and 55 of this act, the latter sections must prevail. " The latter section, being the last expression of the legislative will, must repeal the former:" Penna. Gaslight Co. v. Scranton, 97 Pa. 538.

The fact that § 13 was amended by the act of June 8, 1881, P. L. 68, does not affect this principle. The amendment is in the precise words of the old section, inserting simply the words, " any private or special statute to the contrary notwithstanding." The special necessity for these words is not apparent, for the clause conferring powers repugnant to the powers contained in any private or special statutes necessarily repealed

Opinion of Court below.

such statutes. The amendment simply takes the place of the old, and is still controlled by the succeeding sections. But it is unnecessary to repeal it. In the case of the Penna. Gaslight Co. v. Scranton, supra, a clause apparently conflicting was reconciled by showing that the one applied expressly to cities of the third class, and the other to cities of the first and second classes. By confining § 13 to the first and second class, it may, perhaps, still stand. But, if not, the latter section must nevertheless prevail.

The method of opening the streets, indicated and sustained in this opinion, is reasonable and consistent. Whilst facilitating the progress of the city, it does no harm to the rights of the citizen. The city is, therefore, not doing an unlawful act, and ought not to be enjoined.

Preliminary injunction dissolved.

On October 18, 1889, the plaintiff amended his bill by adding thereto an averment that since the dissolution of the preliminary injunction the defendant had entered upon the property of the plaintiff and proceeded to remove his building and open Fifth street ; and prayed for an injunction against the further maintenance of said street through said property, and for an account and a decree for the payment of damages to the plaintiff.

The defendant's answer, filed November 18, 1889, averred that the city of Reading, on July 1, 1874, duly accepted the act of May 23, 1874, P. L. 230, and thereby became a city of the third class ; that the street in question was governed solely and exclusively by clauses 2, 38 and 39 of § 20, and by §§ 53–56 of said act, and the statutory enactments, referred to in the bill, had no application to it; that after the passage of the ordinance of March 14, 1888, the defendant, having been unable to agree with the plaintiff on the question of damages, and having tendered to him a bond which he refused to accept, filed said bond in the Court of Common Pleas of Berks County, which duly approved the same ; that the section of the topographical survey, embracing the street in question, was confirmed by the Court of Quarter Sessions of said county in 1866, by reason whereof the plaintiff had constructive notice of the existence of said street, and, in addition, he re-

Arguments.

ceived actual notice from the defendant prior to the erection of his building.

The cause having been submitted on bill and answer, the court, ERMENTROUT, P. J., without opinion filed, entered a decree that the bill be dismissed at the costs of the plaintiff. Thereupon the plaintiff took this appeal, specifying that the court erred:

1. In making the decree dismissing the plaintiff's bill.

2. In not making a decree enjoining the defendant.

3. In not decreeing damages to the plaintiff.

*Mr. Isaac Hiester*, for the appellant:

1. The act of May 23, 1874, P. L. 230, contains no express repeal of prior special acts, but, on the contrary, expressly provides that the acceptance of its provisions by any city shall not operate as a repeal or surrender of any rights, powers, etc., previously conferred and not inconsistent with it. The provisions in the acts of April 26, 1864, P. L. 583, and April 13, 1868, P. L. 1056, for the opening of streets by a resolution of councils, followed by a proceeding in the Court of Quarter Sessions, are not inconsistent with the provisions of the act of 1874, empowering the councils by ordinance to open streets, except in the single particular of substituting an ordinance for a resolution. The other enactments in the statutes of 1864 and 1868, conferring a supervisory jurisdiction upon the court, are not repugnant to and are not repealed by the act of 1874 re-conferring the same powers on the municipal authorities, without mentioning that jurisdiction, and the power to open streets must still be exercised in subordination to the Court of Quarter Sessions: Brown v. Commissioners, 21 Pa. 37.

2. Again; the act of 1874 is a general act, while the former acts are special: Reading City v. Savage, 124 Pa. 328. Accordingly, the later act does not operate as a repeal: Harrisburg v. Sheck, 104 Pa. 53. It does not take away the jurisdiction of the Quarter Sessions, except as to the assessment of damages: Spring St., 112 Pa. 258. If there were any doubt on this question, it is removed by § 13 of the act of 1874 itself, which carefully preserves the jurisdiction of the courts, directing that proceedings shall be had as now required by law. The obvious method of opening streets, therefore, is, that

councils shall enact an ordinance to open, and the courts having jurisdiction shall direct the opening; and, if security be entered by the city, this shall be done with the consent of the Court of Quarter Sessions. In order to meet this argument, the court below was compelled to make two violent assumptions: first, that the act of 1874 by implication repealed that of 1868, and, secondly, that § 13 of the act of 1874 was not intended to apply to cities of the third class, although by its express terms it is applicable in any city of this commonwealth.

3. That the provisions of § 13, act of 1874, do apply to cities of the third class, and that proceedings in the Court of Quarter Sessions are essential in opening streets in such cities, the decisions conclusively show: Henry St., 123 Pa. 355; East Grant St., 121 Pa. 596. If, however, the act was intended to authorize councils in cities of the third class to open streets without such a proceeding, the act offends against § 7, article III., of the constitution prohibiting local laws authorizing the laying out, opening, etc., of streets, as it would be an attempt to change the practice in a single class of cities: Ruan St., 132 Pa. 257. It should be so construed as to be constitutional, but whichever construction be given to it, the opening of the street without proceeding in the Court of Quarter Sessions was illegal. As the court below had jurisdiction originally to restrain this trespass, it retains its jurisdiction, now that the trespass has been completed, to grant the plaintiff full relief by a decree for damages: Masson's App., 70 Pa. 30; Mayer's App., 73 Pa. 166; Allison's App., 77 Pa. 221.

*Mr. William J. Rourke,* City Solicitor, for the appellee:

1. Streets in Reading are to be opened by ordinance of councils, the damages assessed by the Court of Common Pleas, and the consent of the Quarter Sessions to the opening, the assessment of damages or the entry of security, is not necessary: Spring St., 112 Pa. 258. Clauses 2, 38 and 39 of § 20, and §§ 53-56 of the act of May 23, 1874, P. L. 230, fully and completely supply the former procedure as established by the acts of April 26, 1864, P. L. 583, and April 13, 1868, P. L. 1056, and vest in the city councils an absolute discretion that is inconsistent with the former statutory provisions, besides pro-

Opinion of the Court.

viding an entirely new and complete system for the assessment of damages. The acts of 1864 and 1868 are therefore necessarily repealed: Ætna Ins. Co. v. Reading, 119 Pa. 417; Johnston's Est., 33 Pa. 511.

2. If § 13 of the act of 1874 applies to cities of the third class, it is repealed by the later sections of the same act, already cited: Penna. Gaslight Co. v. Scranton, 97 Pa. 538. But it can be reconciled with those sections by confirming its operation to cities of the first and second classes: Penna. Gaslight Co. v. Scranton, supra. If the principles laid down in Wheeler v. Philadelphia, 77 Pa. 338, are to prevail, there should be no hesitation in affirming the constitutionality of the act of 1874. But, in any event, the plaintiff is not entitled to relief. Having built on the street with both constructive and actual notice of the confirmation of the topographical survey, he is entitled to no damages at all: § 44, act of April 26, 1864, P. L. 583; and, being a trespasser, he has no equity. If he were entitled to damages, he has an adequate remedy at law. A public work should not be arrested by injunction, especially after a large expenditure of money: Wheeler v. Rice, 83 Pa. 232.

OPINION, MR. JUSTICE WILLIAMS:

Under the acts of 1864 and 1868, relating to the city of Reading, the proceedings necessary to lay out and open streets were substantially the same as those in use throughout the rest of the state. The necessity for opening the street, and the damages sustained in consequence of such opening, were passed upon by the same board of viewers, who were appointed by, and reported to, the Court of Quarter Sessions. That court heard exceptions to their report, and confirmed it or set it aside; and, after final confirmation, issued its order authorizing and requiring the proper officer to open the street for public use. Whether the proceedings were set on foot by the city authorities or by private individuals, they were conducted in the same manner, and were in the same court. The city had the power to project or lay out streets, but it had no power to open them, except through the Court of Quarter Sessions. This was the situation until the city of Reading adopted the act of 1874, which provided for dividing the cities

of the state into three classes, and for the incorporation and government of cities of the third class. By the act of adoption, the city of Reading became a city of the third class, and acquired all the powers which that act conferred on cities of the third class, organized under its provisions. To what extent did the act of 1874 enlarge the corporate powers of the city, or modify the proceedings in the courts in road cases?

The first section provides that "the corporate powers . . . . of cities of the first and second class, and those of the third class now in existence by virtue of the laws of this commonwealth, shall be and remain as now provided by law, except where otherwise provided by this act." Passing from the general subject of corporate powers to the particular one of proceedings in street cases, § 13 declares that "the municipal authorities and courts having jurisdiction in any city of this commonwealth shall have exclusive control and direction of the opening, widening," etc., of all streets within the limits of the city, and that the proceedings shall be such as are required by law. So far, the existing system in the city of Reading was clearly saved by the act of 1874, and it was to be administered precisely as before the adoption of that act. Section 20, clauses 38, 39, however, confer the authority upon the city councils to "open, widen, or otherwise improve or vacate any street, avenue, alley, or lane within the limits of the city;" and, so that there may be no mistake about the extent of the power conferred, the words are added, "to create, open, and improve any new street, avenue, alley, or lane." Sections 47–50 confer certain powers relating to sewerage, and to gas and water supply; and the city is authorized to enter upon the lands of private owners for these purposes, at a time and in a manner of which the city is alone to judge, and in relation to which the Court of Quarter Sessions has no supervisory control. The city is treated as entering on the lands appropriated by virtue of the right of eminent domain, and as bound to make compensation in the same manner that a railroad or other corporation would be required to do. This is made clear by the language employed in § 53: "That in all cases in which, under the provisions of this act, either in the opening or widening of streets, or in the erection of waterworks, gas-works, or public buildings, or for any other purpose

Opinion of the Court.

whatsoever, lands, property, materials, or franchises are re-
quired to be taken by any of said cities of the third class for
public purposes," when an agreement cannot be had with the
owner in regard to damages, seven viewers may be appointed
by the Court of Common Pleas, to assess the damages done to
the owner of the land or materials taken.

The number of the viewers, the duties imposed upon them,
and the subsequent proceedings follow almost exactly the pro-
vision for the assessment of damages done by the entry of a
railroad, or other corporation having the right of eminent
domain. We conclude, therefore, that, in all cases where the
proceedings are conducted at the instance of private persons,
streets may be opened in the city of Reading as they were
opened before the adoption of the act of 1874, through the
Court of Quarter Sessions, whose jurisdiction has not been
taken away. So, also, where the city is the mover, but does
not choose to exercise its power of appropriation, it may pro-
ceed by petition and invoke the power of the Quarter Sessions.
But in all cases where the city exercises the new power to
open a street by an entry on the land of the owner, conferred
by the act of 1874 on cities of the third class, or to appropriate
the property of a private person to public use for the purposes
of gas or water supply, or other municipal object, compensation
must be secured and adjusted through the Court of Common
Pleas. In such cases, the city is the taker of the property ap-
propriated, for its own uses, and it must secure compensation
to the owner as any other taker under the authority of the
commonwealth would be required to do. Whether the pro-
ceedings should be in the Quarter Sessions or in the Common
Pleas depends, therefore, on what is to be accomplished. If
the purpose is to lay out and open a street, the Quarter Ses-
sions is the proper forum. If it be to secure compensation for
property appropriated by the city to streets or other public use,
the Common Pleas has jurisdiction, as it has in the case of an
entry by railroad or other corporations on private property.
The case of Spring St., 112 Pa. 258, involved a question of
compensation for a street opened by the action of the city;
and, although the case was affirmed because the city went into
the Quarter Sessions for the adjustment of the damages, and
ought not, therefore, to be allowed to deny its authority, this

court held that the city should have applied to the Common Pleas in accordance with the act of 1874.

There is no constitutional question in this case, nor is there the slightest resemblance between it and the recent case of Ruan St., 132 Pa. 257. In that case, no question was raised over the exercise of any municipal power. The right of the cities of either class to discharge the functions of municipal government was freely conceded. Among these is the laying out of streets; the decision of the question when, for municipal purposes, their opening should take place; how they shall be paved, curbed, sewered, lighted. What was denied was the right of the legislature to make the classification of cities the basis of legislation for them on subjects not relating to the organization or administration of their municipal governments, but to questions of public concern, such as the forms of procedure in the courts of the state; the rate of interest; exemption of property from levy and sale on legal process; the mode of proceeding to secure to a citizen compensation for an entry on his property for public use by virtue of the right of eminent domain, and the like. In other words, we held that while the classification of cities authorizes all necessary legislation for them as cities, in the management of their municipal affairs, it does not make three separate states within the territorial limits of Pennsylvania, for each of which there may be different laws, on subjects of a general character, from those in force in the rest of the commonwealth. On the other hand, while cities may have the legislation needful to the proper regulation and discharge of all municipal powers, they are, under the constitution, and they must remain, a part of the state of Pennsylvania for all purposes not municipal, and subject to the laws of the state on all subjects not of municipal concern. It is plain that no such question is involved in this case. Here the city of Reading seized and appropriated private property to public use. It went into the Court of Common Pleas to give security and obtain an assessment of damages. This was exactly in accordance with the act of 1874, and with the decision of this court in Spring St., supra, and

The decree of the court below is affirmed; costs to be paid by appellant.