## Miller's Estate.

10

Argued April 20, 1936.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Russell J. Brownback,* with him *Roger B. Reynolds,*
for appellants.

*J. B. Hillegass,* of *Kratz, Hillegass & Moran,* with him
*Robert Ruppin,* for appellee.

OPINION BY MR. JUSTICE DREW, June 26, 1936:

James S. Miller died on December 31, 1924, leaving a
last will and testament dated December 7, 1900.   After
directing his executor to pay debts and to satisfy out of
personalty any mortgages which might encumber his real

estate at the time of his decease, testator provided as follows:

"Item: I give, devise and bequeath unto my wife, Rachael Sinclair Miller, such portion and share of my real and personal estate as she might be entitled to by the Intestate Laws of the State of Pennsylvania.

"Item: I give and devise unto my son, George M. Miller, my mill property and about four hundred Acres of land at Bear Creek, Luzerne County, Pennsylvania, complete, he to pay therefor the sum of Six Thousand Dollars to my Estate—that being the amount at which I value the same.

"Item: All the rest, residue and remainder of my real estate I desire shall be held by my executor hereinafter named; he to lease and rent the same for the best interests of my estate and to pay over out of said rentals the one-third clear, the net income thereof, after payment of all costs of repairs, insurance and costs of collection, &c., unto my wife, Rachael Sinclair Miller, and the remaining two-thirds thereof to retain as his share or portion for and during the time of his natural life, and the life of my said wife, Rachael Sinclair Miller, But under no consideration shall my said Real Estate be sold during the lifetime of my said son, George M. Miller, or my said wife, Rachael Sinclair Miller.

"If my said son should die before my said wife then the said two-thirds of the said net income from said Real Estate shall be paid to his child or children then living, share and share alike, and the other one-third thereof unto my said wife. If my said wife should die before my said son, George, then the whole net income to go to my said son, George M. Miller."

The will then provided for the sale of the testator's realty upon the death of the survivor of his wife and son and for the distribution of the proceeds of the conversion to the latter's children then living, failing in which the fund was to go to the testator's brothers and sisters or

their descendants. Decedent's son was appointed executor of the will.

At the time of the execution of the will testator's family consisted of a second wife, then about sixty-four years of age, a son by a former marriage, and a granddaughter. When he died in 1924 there was an additional granddaughter. Shortly after the death of her husband the widow was adjudged weak-minded and a guardian was appointed for her estate. The guardian unsuccessfully sought permission to file an election to take against the will.

We are here concerned with the distribution of the net income of the real estate from January 14, 1928, the date of the widow's death, until the son's death on May 12, 1933. The personal representatives of the son claim the entire fund, while the executor of the widow's estate, on behalf of her descendants by a former marriage, claims that he is entitled to one half. The solution of the controversy involves a construction of the terms of the testator's will with a view to ascertaining the interest taken by the widow in the decedent's realty. Did she take a one-third interest for life, as provided by article I, of section 1, of the Act of April 8, 1833, P. L. 315,[1] in force at the time the will was executed, or did she take, at the minimum, one half absolutely, under section 1 (a) of the Act of June 7, 1917, P. L. 429,[2] in effect at the death of the testator? The court below held that she took one half of the real estate absolutely and that her personal representative was therefore entitled to one half of the

---

[1] That article provides: "Where such intestate shall leave a widow and issue, the widow shall be entitled to one-third part of the real estate for the term of her life, and to one-third part of the personal estate absolutely."

[2] That section provides: "Where such intestate shall leave a spouse surviving and one child only, or shall leave a spouse surviving and no children, but shall leave descendants of one deceased child, the spouse shall be entitled to one-half part of the real and personal estate."

rents now in dispute. From the overruling of exceptions to the decree so entered the executrices of the estate of the testator's son have appealed.

Paramount in the construction of any will is the actual intention of the testator, and the ascertainment of that intention is, in the last analysis, the province of the courts: *Byrne's Estate,* 320 Pa. 513. The intention is to be gathered from the entire will, read as a connected whole, rather than from the terms of a particular or isolated devise, which, regarded alone, might be inconsistent with the testator's obvious testamentary scheme: *Bumm's Estate,* 306 Pa. 269; *Murray's Estate,* 313 Pa. 359; *Conner's Estate (No. 2),* 318 Pa. 150. In ascertaining the intention of the testator his will is to be construed as of the date of its execution: *Peterson's Estate,* 242 Pa. 330; *Thompson v. Wanamaker's Trustee,* 268 Pa. 203; *Whiteside's Estate,* 302 Pa. 452. It must be read and its meaning interpreted in the light of the circumstances by which the testator was surrounded when he made it and by which he was very probably influenced, chief among which are the condition of his family, the natural objects of his bounty, and the amount and character of his property: *Hermann's Estate,* 220 Pa. 52; *Frisbie's Estate,* 266 Pa. 574; *Brooklyn Trust Co. v. Warrington,* 277 Pa. 204; *Mayer's Estate,* 289 Pa. 407. An application of these principles cannot but lead to the conclusion that the will of the present decedent discloses a clear intention to restrict his wife's share in his real estate to a one-third interest for life.

Uppermost in the testator's mind was his real estate, its preservation intact during the lives of his widow and son, and its final sale, to be followed by a distribution of the proceeds among his own grandchildren, to the exclusion of his wife and her issue by a former marriage. It seems clear to us that it was merely by way of introduction that he first directed that his wife should receive such share of his realty as she might be entitled to under the intestate laws. It is apparent from the two para-

14

graphs immediately following that the testator still had in mind the whole of his real estate. After making provision for the purchase of the Luzerne County mill property by his son, he proceeded to direct that "all the rest, residue and remainder of [the] real estate" be held intact during the lives of his wife and son, making provision for the distribution of the income during that time. At this point he specifically stated just what his wife's share was to be, and that share was identical with the provision made by the intestate laws then in force. Under the circumstances the subsequent devise to the wife of a one-third interest for life was not cumulative but repetitious, and in explanation of the original devise. Such an interpretation is not only plainly evident, but it is also in accord with the constructional rule that "In the absence of internal evidence of intent, . . . where two legacies of quantity of equal amount are bequeathed to the same legatee in one and the same instrument, the second bequest is regarded as mere repetition and the beneficiary takes but one legacy": *Kessler's Estate*, 288 Pa. 91, at page 95; *Black's Estate*, 288 Pa. 525. Our comment in the latter case, at page 527, is equally applicable in the instant case; here, too, "The will before us contains no internal evidence which in any way weakens the applicability of this principle to the present case. What evidence there is . . . leads to the same conclusion that follows from the rule stated."

It is inconceivable that the testator ever intended that his second wife should take, because of a future change in the intestate laws, one half of his real estate outright, and, in addition, enjoy a life interest in one third of the income derived from the other half. On the contrary, it is clear that his intention was to limit his wife to one third of the income for life, preserving the bulk of the estate and the income thereof for his son and the son's children, the natural objects of his bounty and the objects of his most earnest solicitude. Speaking of a similar factual situation in *Scott's Estate*, 313 Pa. 155, we

said, at page 157: "When we come to consider testator's circumstances and situation, as we should (*Brooklyn Trust Co. v. Warrington*, 277 Pa. 204), we find that the appellant was his second wife, that she was up in years and that he had two living children by his first wife. It was the natural thing to protect his wife for her lifetime and to allow his estate to go to his children when she should die."

Conclusive of the fact that testator did not intend to give any of his realty to his wife absolutely is the salient provision that "If my said wife should die before my said son, George, then the whole net income to go to my said son, George M. Miller." Such an intention is also evidenced by that portion of the will which provides that "under no consideration shall [the] said Real Estate be sold during the lifetime of my said son, George M. Miller, or my said wife, Rachael Sinclair Miller."

In support of its conclusion that the decedent intended that the widow take one half of the realty in fee, the court below placed great reliance upon section 9 of the Act of June 7, 1917, P. L. 403, providing that "Every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." This section previously existed as section 1 of the Act of June 4, 1879, P. L. 88. Our cases have repeatedly held, under both acts, that those sections refer to the property that was devised, not to the estate in the property created by the will: *Fidelity Ins. Trust and Safe Deposit Co.'s Appeal*, 108 Pa. 492; *Williams v. Brice*, 201 Pa. 595; *Peterson's Estate, supra; Thompson v. Wanamaker's Trustee, supra*. These cases make it clear that "the rule making a will to speak as though executed immediately before the death of the testator, relates to the effect and operation of the instrument rather than to its construction, and, as regards the intention of the testator, the will is to be construed as of

16

the date of the execution": *Peterson's Estate, supra,* at page 338. The object of the legislature was the avoidance of the common-law rule that after-acquired realty did not pass under the terms of a previously executed will. Section 9 of the Act of June 7, 1917, P. L. 403, has no reference to the construction of a decedent's will with a view to ascertaining his intention.

Nor should the chancellor have completely disregarded the item with respect to the son's purchase of the Luzerne County mill property upon the ground that that property was disposed of by the testator in his lifetime. If that provision be deleted an entirely different complexion is thrown upon the will. It cannot be done, however, because so to do would violate the fundamental rule that we must put ourselves in the position of the testator at the time he executed his will and read the will accordingly. Then and only then can the court arrive at the intention of the testator at the determinative time, the time of the execution of the instrument.

Appellee's insistence that testator contemplated a change in the intestate laws, and that he intended that his widow should take whatever share the legislature might subsequently provide, is vain. All of the provisions in the will, buttressed by the surrounding circumstances, show beyond peradventure that testator was aware of the provisions of the intestate laws then in force, and that it was his intention to limit his wife's share in his realty to the share therein provided.

The decree of the court below is reversed, and the entire fund is awarded to appellants; costs to be paid by appellee.