Spain's Estate.

Argued April 22, 1937. Before KEPHART, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

W. *Logan MacCoy*, of *MacCoy, Brittain, Evans & Lewis*, with him *Richard W. Ledwith*, for appellant.

A. *Sidney Johnson, Jr.*, of *Greer & Johnson*, with him *Robert E. Steedle*, for appellees.

OPINION BY MR. JUSTICE LINN, July 7, 1937:

Testatrix, a single woman, died July 20, 1935, leaving a holographic will dated February 6, 1934. She made a bequest "to the Woman's Hospital, to found a room for the free treatment of sick Phila. Public school teachers." There were no attesting witnesses, though the law in force in 1934 required them. For want of such witnesses the bequest was held void and the property was awarded to cousins, next of kin. The Hospital appeals and contends that the amendment of July 2, 1935, P. L. 573, to section 6 of the Wills Act of 1917, P. L. 403, 20 PS section 195, abolished the requirement of subscribing witnesses, that it applied to this will, and that the decree was therefore wrong. The learned court below was of opinion that the amendment was prospective only, and that, as her will was made before it was passed, the validity of the bequest must be determined by the law existing when the will was executed.

The decision depends on a reading of the Wills Act as amended. The settled rule is that after a statute has been amended, it will be read as if the amendment had originally been part of it—as if a new act had been

adopted in the amended form: *Com. v. Barrett,* 304 Pa. 13, 155 A. 95; *Shaaber v. Reading,* 133 Pa. 643, 647, 19 A. 419; *Thomas v. Hinkle,* 126 Pa. 478, 17 A. 670; *Linsky v. Luzerne County,* 101 Pa. Superior Ct. 42; *Harvey v. Hazleton,* 81 Pa. Superior Ct. 1; Endlich, Interpretation of Statutes 397, section 294; 59 C. J. 1096, section 647.

In the light of that rule we examine sections 6 and 26 of the Wills Act as changed in 1935. We shall quote section 6 as originally passed indicating by italics the portions of it that were omitted by the amendment. "No estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will *attested by two credible, and, at the time, disinterested witnesses,* at least thirty days before the decease of the testator; and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law. *A disinterested witness, within the meaning of this section, is a witness not interested in such religious or charitable use,—this section not being intended to apply to a witness interested in some other devise or bequest in the same instrument."* As amended, attesting witnesses were no longer required. The second section of the amending Act of July 2, 1935, provided that the change in the law should "become effective immediately upon its final enactment."

Section 26 of the Wills Act of 1917, P. L. 403, 412, is as follows: "This act shall take effect on the thirty-first day of December, one thousand nine hundred and seventeen, and shall apply to the wills of all persons dying on or after said day. As to the wills of all persons dying before that day, the existing laws shall remain in full force and effect." The section provides for two things: *first,* an effective date for all the provisions of the act; *second,* that it shall apply to the wills of all

persons dying after it shall come into operation. If, therefore, the first provision is changed as to any subject matter with which the amendment deals, the whole act is changed in that respect, but as the amendment made no change in the second provision, it remains the law as originally drawn and applies to the wills of all persons dying after the effective date of the act as amended. There is no difficulty so to apply the act; if a testator died between 1917 and July 2, 1935, the act applies as it was prior to amendment; if he dies after July 2, 1935, his will is still subject to all the provisions of the act except as the amendment changed section 6, which then became part of the Wills Act. This is a necessary effect of the rule of statutory construction stated above.

Notwithstanding the ambulatory character of a will it was long held[1] that the validity of the will, or of a devise or bequest contained in it, must be determined as of the time it was made. Some of the hardships resulting from the application of that rule were corrected by the Wills Act of 1833; among them,[2] for example, that a will may dispose of after-acquired property. Section 18 of that Act, 1833, P. L. 249, provided that it should "take effect from and after the first day of October next . . ." without however specifying, as section 26 does, and the difference is important, that it should apply to the wills of persons dying thereafter. Other enlargements of the power of testators were made by subsequent acts,[3] among them, the Act of April 11, 1848, P. L. 536, section 7 et seq., and the Act of June 8, 1893, P. L. 344, section 5, but neither of these contained any

---

[1] See cases collected in *Gable's Executors v. Daub,* 40 Pa. 217.

[2] Many others are noted in the Report of the Commission that drew the act.

[3] See *Kurtz v. Saylor,* 20 Pa. 205; as to the Act of 1887, P. L. 332, see *Packer v. Packer,* 179 Pa. 580, 36 A. 344.

provision making them apply to wills that came into operation after the statute went into effect.

In a supplement to the Wills Act of 1833, passed June 4, 1879, P. L. 88, a change in legislative policy appeared; section 4 of this supplement provided "This act shall operate upon and go into effect as to the wills of all persons who shall die after the date of the act." The difference, if any, between section 4 of that act and section 26 of the Wills Act is in the difference in effect of the words "This act shall operate upon" and the words "This act . . . shall apply to" the wills of persons dying after the act became effective. In *Aubert's Appeal,* 109 Pa. 447, 1 A. 336, the question was whether a will made in 1876 which made no reference to a general power of appointment (created by another's will admitted to probate in 1873) executed the power. This court held that the words of sections 3 and 4 applied to the will made in 1876 because testatrix died after the Act of 1879 went into effect. The court said: "The Act of 1879, as we have seen, operates upon the wills of all persons who shall die after the date of the act. It is not confined to wills which are executed after the date of the act. The reason of this is plain. The act is based upon the fact that testators in many instances are either ignorant of the law or neglect to comply with it. In order that their intent may not by such means be defeated, it declares that under certain circumstances a general will shall execute a power. We are of opinion that this will comes within the Act of 1879." In *Penna. Co. for Ins. on L. & G. A. Account,* 264 Pa. 433, 107 A. 840, the same act was applied and it was held that a will made in 1890 executed a general power of appointment not created until 1908.

Section 26, which provides that it "shall apply to the wills of all persons dying on or after" its effective date, means the same thing as section 4 of the Act of 1879. Applying the rule that the amendment of July 2, 1935, must be read as if originally part of the Act of 1917, or

as if that act had been reënacted in 1935 using the language of the amendment doing away with attesting witnesses, we still have remaining in the amended act (because not changed by the amendment) that it shall apply to the wills of all persons dying on or after the effective date. Unless this construction is adopted we should be attributing to the legislature an intention which is not expressed, that in addition to eliminating the necessity of subscribing witnesses the amendment by implication repealed that part of section 26 stating that the Wills Act should apply to the wills of persons dying after it became effective. There is nothing to support the idea of implied repeal. We think that the words have, and were intended to have, a retroactive effect[4] to the extent indicated.

It is not without interest to observe that a statute with similar language came up for construction in *In re Bridger, Brompton Hospital for Consumption v. Lewis* [1893] 1 Ch. 44, affirmed on appeal [1894] 1 Ch. 297, and followed since. Bridger's will was dated June 29, 1891; after a life estate, he gave his property "In trust to pay such part of my said residuary trust estate which may by law be given for charitable purposes unto the *Brompton Hospital for Consumption,* and as to the rest and remainder of the said residuary trust estate upon trust for *Elizabeth Williams* absolutely." At that time only personalty could be given for such charitable use. Testator died February 20, 1892. In the meantime on August 5, 1891, a statute was passed which increased the kinds of property which could be left to such

---

[4] It may be noted that the Orphans' Court of Allegheny County came to the same conclusion in *Perry's Estate,* 67 Pittsburgh Legal Journal 216, in dealing with a will executed by a mark apparently within the provisions of section 1 of the Act of January 27, 1848, P. L. 16, but not within the superseding provisions of sections 2 and 3 of the Wills Act of 1917, the will having been made in 1914 and testatrix having died in 1918.

charity, which, if applied to the will, would carry the entire residue to the hospital and leave nothing for the residuary legatee, Williams. The effect of section 9 of the statute[5] providing "This act shall only apply to the will of a testator dying after the passing of this act" was the point for decision. In the Court of Appeal, LINDLEY, L. J., after referring to section 24 of the English Wills Act (apparently similar to section 9 of our Wills Act[6] requiring that every will shall be construed with reference to the property comprised in it and speak and take effect as if it had been executed immediately before the death of the testator unless a contrary intention shall appear by the will) said that "This section, however, does not by itself quite cover this case, for, although it enables a testator to dispose of property which he has not got when he makes his will, the section does not of itself enlarge his power of disposing of what he then has. This power, however, is, I think, conferred by sec. 9 of the *Mortmain and Charitable Uses Act,* 1891. That section is so worded as to shew that the Legislature intended that the act should apply to wills made before this date, provided they came into operation afterwards. Combining this section with sec. 24 of the *Wills Act,* the result appears to me to be that, if a testator devises or bequeaths to a charity all the property which he can by law so devise or bequeath, the charity will take whatever property answers this description at the testator's death, and not only that which answered the description when he made his will. Such a devise or bequest would, I apprehend, clearly include property which a testator acquired a right to dispose of under a general power conferred upon him after he made his will.[7] An exten-

---

[5] Quoted [1893] 1 Ch. 45.

[6] *Miller's Estate,* 323 Pa. 9, 15, 186 A. 99.

[7] Agreeing with *Aubert's Appeal,* 109 Pa. 447, 1 A. 336, and *Penna. Co. for Ins. on L. & G. A. Account,* 264 Pa. 433, 107 A. 840, cited above, construing our Act of 1879.

sion, whether by a statute or otherwise, of a testator's power of disposition in the interval between the making of his will and of his death does not alter the meaning of his language, although such extension will necessarily enlarge the legal effect of that language by making it apply to more objects than it previously would have applied to." Also compare *Langley v. Langley,* 18 R. I. 618, 30 A. 465.

We must therefore conclude that while the bequest to the Woman's Hospital would have been void, had section 6 not been amended, the legislature had the power, no rights having vested prior to the death of the testatrix, to enlarge the power of disposition by the testatrix of property owned by her at her death and to eliminate the formality of attesting witnesses.

A question of the identity of the Woman's Hospital as legatee was made in the court below but not formally passed on because the bequest was held invalid.[8]

The decree is reversed but instead of making an award to the Woman's Hospital we must remit the record to enable the court to pass on the question left undetermined. Costs of appeal shall be paid out of the fund for distribution.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I cannot agree with the majority opinion in this case. It has long been established in Pennsylvania that the

---

[8] On this subject the learned auditing judge said: "The second question presented in the petition for distribution need not be considered in view of my finding that the Woman's Hospital does not take. The question presented is that the identity of the Woman's Hospital named as legatee should be established if the bequests are valid, as there are several hospitals in the city of Philadelphia of a similar name. It may be stated, however, from the testimony presented at the audit, and the surrounding circumstances of the decedent immediately prior to her death, that she did intend the Woman's Hospital, represented by Mr. Ledwith, but as above recited, this now becomes unimportant."

validity of the execution of a will is to be tested by the statutes in force at the time of its execution. In *Packer v. Packer,* 179 Pa. 580, 36 A. 344, this court said: "As recognized by this court, from *Mullen v. M'Kelvy,* 5 Watts 399, to *Camp v. Stark,* 81* Pa. 235, the rule relating to the proper execution of a will is that it 'must be judged of by the law as it stood at the time of its execution and not at the time of the death of the testator.' It was accordingly held in *Taylor v. Mitchell,* 57 Pa. 209, that a charitable bequest in a will attested by a single witness, prior to the Act of April 26, 1855, was good at the death of the testator after that date, although that act required two subscribing witnesses. Speaking for the court in that case, Mr. Justice SHARSWOOD said: 'When a testator makes a will, formally executed according to the requirements of the law existing at the time of its execution, it would unjustly disappoint his lawful right of disposition to apply to it a rule subsequently enacted though before his death. While it is true that everyone is presumed to know the law, the maxim in fact is inapplicable to such case; for he would have an equal right to presume that no new law would affect his past act, and rest satisfied in security on that presumption.'"

The majority opinion attempts to take the instant case out of this general rule by stating that "the settled rule is that after a statute has been amended, it will be read as if the amendment had originally been part of it—as if a new act had been adopted in the amended form." If this means, as the majority opinion implies, that when an act is amended the amendment has a retroactive effect, it is not supported by any authorities. The true rule, as laid down by Endlich on Interpretation of Statutes, section 294, is as follows: "A statute which is amended is thereafter, and as to *all acts subsequently done* [italics supplied], to be construed as if the amendment has always been there. . . ." This rule was ex-

pressly approved by the United States Supreme Court in *Blair v. Chicago,* 201 U. S. 400, 475, and also by the Supreme Court of New Jersey in *Farrell v. State,* 54 N. J. L. 416, 24 A. 725. It has been followed by the Common Pleas Courts of Pennsylvania. I have not found any jurisdiction in which the rule is not approved.

No law, whether expressed in the form of an amendment or a statute, has a retroactive effect unless it expressly purports to do so. Retroactive acts are for obvious reasons not favored by the law. Mr. Chief Justice GIBSON in *Greenough v. Greenough,* 11 Pa. 489, 495, said: "All ex post facto laws are arbitrary; and it is to be regretted that the constitutional prohibition of them has been restricted to laws for penalties and punishments. In a moral or political aspect, an invasion of the right of property is as unjust as an invasion of the right of personal security. But retroactive legislation began and has been continued, because the judiciary has thought itself too weak to withstand. . . . Yet, had it taken its stand on the rampart of the Constitution at the onset, there is some little reason to think it might have held its ground. Instead of that, it pursued a temporizing course till the mischief had become intolerable, and till it was compelled, in *Norman v. Heist* and *Bolton v. Johns,* to invalidate certain acts of legislation, or rather to reverse certain legislative decrees." In that case this court held that the Act of January 27, 1848, supplementary to an act relating to last wills and testaments, passed April 8, 1833, was exclusively prospective and was destitute of retroactive force.

In *U. S. v. La Franca,* 282 U. S. 568, 576, the Supreme Court of the United States said: "Section 35 of the act, in effect, amended the preceding statutes in the particulars stated; and, as thus amended, these statutes now are to be read, as to *all subsequent occurrences* [italics supplied], as if they had originally been in the amended form." In *People v. Board of Supervisors,* 67 N. Y. 109,

the Court of Appeals of New York held that the amendment of a statute, by declaring that the same shall read as prescribed by the amendatory act, is not a repeal of the original statute; but from the time of the passage of the amendatory act, the whole force of the enactment, *as to subsequent transactions,* rests upon it.

The cases cited in the majority opinion do not support the proposition that an amendment to an act makes the amendment retrospective as of the date of the act which it amends. The case of *Com. v. Barrett,* 304 Pa. 13, 155 A. 95, cited in the majority opinion, does not relate to anything done between the date of an act and the date of its amendment. That case simply held that certain statutes passed in 1842 and 1845 must be treated as written in the Act of 1785, for the purpose of determining the scope and effect of the three acts. No question arose in that case as to any amendment operating retrospectively. *Shaaber v. City of Reading,* 133 Pa. 643, 19 A. 419, cited in the majority opinion, does not support the proposition that an amendment to an act makes the amendment operate retrospectively from the time of the original act. It is clear from a review of the decision of this court in *Thomas v. Hinkle,* 126 Pa. 478, 17 A. 670, that it does not support the proposition that an amendment to an earlier act operates retrospectively. *Harvey v. Hazleton,* 81 Pa. Superior Ct. 1, also cited in the majority opinion, simply holds that when a statute continues a former statute law, the law common to both acts dates from its first adoption, and only such provisions of the old act as are left out of the new one are gone, and only new provisions are new laws. Where an act is amended "so as to read as follows," the part of the original act which remains unchanged is considered as having continued in force as the law from the time of its original enactment and the new portion as having become the law only *at the time of the amendment.*

The case of *Aubert's Appeal,* 109 Pa. 447, 1 A. 336, which is also cited in the majority opinion, does not de-

cide the question that is before this court for adjudication in the instant case. That case did not involve any question of the validity of the execution of a will or of any bequest in a will. As Mr. Justice PAXSON, in delivering the opinion of this court, said (page 459) : "The will . . . purports only to pass the estate of Mrs. Aubert; the fund in question is a part of the estate of George P. DeSilver, over which he gave his wife a power of appointment. It is very clear that by the law of Pennsylvania as it existed at the time this will was written, the will would not have been an execution of the power. But after the date of the will and before the death of Mrs. Aubert, the Act of 4th June, 1879, P. L. 88, was passed by the legislature of this state, the third section of which provides inter alia that 'a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will.' And the fourth section enacts that 'this Act shall operate and go into effect as to the wills of all persons who shall die after the date of the Act.' " It is obvious that the Act of 1879 referred to is simply an act which regulated the construction of certain provisions of a will. It did not in any degree change the method of drafting and executing a will. It provided simply a new rule of construction which should operate on all wills whenever they should thereafter be brought before the court for construction. The case of *Packer v. Packer,* already cited in this opinion, was decided twelve years after the case of *Aubert's Appeal.* Mr. Chief Justice STERRETT who wrote the opinion in the *Packer* case was a member of the court that decided *Aubert's Appeal.* In deciding as the court did in the *Packer* case that the legality of the execution of a will

"must be judged of by the law as it stood at the time of its execution and not at the time of the death of the testator," the Supreme Court did not think it necessary to overrule its decision in *Aubert's Appeal*. This is persuasive proof that nothing was laid down in *Aubert's Appeal* that was contrary to the clear decision in *Packer v. Packer* handed down in 1897. Also, in the *Packer* case counsel on neither side regarded the decision in *Aubert's Appeal* sufficiently pertinent to the issue involved in the *Packer* case to even refer to it in their briefs.

The case which the majority opinion also cites from England *In re Bridger, Brompton Hospital for Consumption v. Lewis,* 1 Ch. 44, does not contravene the principle that the validity of a will is to be tested by the law in force at the time of its execution. It simply holds that if a testator devises or bequeaths to a charity all the property which he can by law so devise or bequeath, the charity will take whatever property answers this description at the testator's death, and not only that which answered the description when he made his will. There is an obvious difference between testing the validity of a will by the law in existence at the time the will was made and determining what property the will will affect by a law which was passed after the will was made. In the instant case, we are concerned only with the validity of a charitable bequest made in a will dated February 6, 1934. As a bequest that was either a valid or invalid bequest according to the law existing at the time the will was executed. Tested by the law of that time, it was an invalid bequest. For us to hold that a subsequent act of legislation can convert an invalid bequest into a valid bequest or a valid bequest into an invalid bequest, would be contrary to the established law of this State and would lead to uncertainty, confusion and injustice. For example, under the Act of July 2, 1935, P. L. 573, attesting witnesses to a will containing

a charitable bequest are not required, and A today executes a will unattested by witnesses and bequeathing $100,000 to a worthy charity; some years hence just before A dies the law again may be amended and two or more attesting witnesses be required to make a charitable bequest valid. A may not know of this change made in the law just before his death or he may be physically or mentally so ill as not to be able to make a new will or to call in witnesses to attest his old will. According to the majority opinion, his earlier bequest to charity, though made in a will which fully met all the requirements under the then existing law, falls. This illustrates the injustice that results from retroactive laws and indicates why retroactive statutes or amendments are not favored by the law and why no statute or amendment should ever be construed as retroactive unless the lawmakers expressly made it so. Retroactive laws are manifestly unjust. When a person squares his acts each day to the law existing on that day, those acts should never afterwards be adjudged to be unlawful. When a testator makes a will valid in accordance with the law at the time the will was made, he has a right to assume that it will be valid at the time of his death.

Furthermore, it should be noted that the Act of July 2, 1935, supra, amending section 6 of the Act of June 7, 1917, P. L. 403, expressly provides that the "act shall become effective immediately upon its final enactment." It nowhere purports to be retroactive. It is clear to me that it does not become retroactive by being an amendment to the Act of 1917. I find no authority in Pennsylvania or elsewhere that makes an amendment to an earlier act retroactive by the very fact that it is an amendment. All the authorities I have found are the other way.

In my judgment the majority opinion conflicts with the law of this Commonwealth as it has been settled for more than a century. See *Mullen v. M'Kelvy,* supra,

decided in 1836. In *Mullock v. Souder,* 5 W. & S. 198, this court, speaking through Mr. Justice SERGEANT, said: "If this Act [of April 8, 1833] applies to a will dated before its passage, where the testator died subsequently, then the parties to this suit have the title, and partition may be made. We think, however, that it does not. It could only do so by giving the Act a retroactive effect, which will never be done, where such does not expressly appear to be the design of the Legislature; but the Act of Assembly will be left to operate on wills made and executed after the Act comes into operation." In *Taylor v. Mitchell,* supra, decided in 1868, this court, speaking through Mr. Justice SHARSWOOD, said: "There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature: *Neff's Appeal,* 9 Harris 243; *Fisher v. Farley,* 11 Id. 501; *Becker's Appeal,* 3 Casey 52. Lord BACON expressed concisely the same rule: *Neque enim placet Janus in legibus.*

"Retrospective laws generally if not universally work injustice, and ought to be so construed only when the mandate of the legislature is imperative."

I agree with Judge SINKLER who, speaking for the Orphans' Court of Philadelphia County, said: "It is so clear to me that the amending Act of 1935 is prospective, and not retrospective, that no further discussion is necessary. I hold that the will and codicils are governed by the law which was in existence at the time of the execution of the will and codicils, February, 1935, and not the law in existence at the time of the death of the decedent, July 20, 1935."

I would affirm the decree of the court below.