## Aubert's Appeal.

1. A will is not revoked by a subsequent instrument intended to con-
firm it.

2. The Act of June 4th, 1879, (P. L. 88) sec. 3, provides that a gen-
eral devise or bequest of the testator's real or personal estate shall
operate as an execution of a power of appointment unless a contrary
intention shall appear by the will. *Held,* That the operation of the Act
is not confined to wills executed after the date of the Act, but extends
by its express terms to all cases where the testator dies after the date
of said Act.

3. A testator domiciled in Pennsylvania left a will in which he con-
ferred upon his wife a power of appointment to be exercised " by her
last will and testament duly executed according to the law of her domi-
cile." The wife married again and died August 2d, 1883, domiciled in
France, leaving a holographic will, dated May 1876, leaving to her
second husband " all my (her) fortune in full ownership, so that he
may dispose of it as he shall deem advisable." After the execution of
this will she executed on September 6th, 1877, an instrument termed
in French law an Acte de Notariete, a donation *inter vivos,* giving to
her husband " in case he should survive her, the whole of her property,
real and personal, which will compose her estate after her death, of what-
ever value it may be and wheresoever the same may be situated, with-
out any exception or reserve ; " with a proviso decreasing the gift to
her husband in case of the existence of children. By the law of France
powers of appointment are prohibited, and an Acte de Notariete be-
tween husband and wife is revocable. The will was duly executed
according to the French code. *Held,*

[Aubert's Appeal.]

(1.) That the will was not revoked by the subsequent Acte de Notariete.

(2.) That the provision that the power was to be exercised by a last will duly executed according to the law of the donee's domicile was not restrictive but enabling, and was to be construed in accordance with the law of Pennsylvania.

(3.) That the Act of June 4th, 1879, sec. 3, P. L. 88, took effect upon the will dated May 18th, 1876, because the testatrix died subsequently to the passage of said Act and, therefore,

(4.) The property over which the power was exercised by the said will passed by virtue thereof to the second husband of the donee.

4. *Semble.* When a testator leaves a pecuniary bequest to one in trust for life with remainder over, the remainder man is entitled upon the termination of the life estate merely to the amount so bequeathed and not to the securities in which it has been invested by the trustee.

5. A sum of .money was left by will to a trustee in trust for a life tenant and to pass at the death of the life tenant to her appointee by will. *Held,* (by the court below) at the filing of the trustee's account, that the fund should be paid by the trustee directly to the appointee of the life tenant and not to her executors for distribution to him.

April 2d, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL from the Orphans' Court of *Philadelphia county :* Of July Term 1884, No. 163.

This was the appeal of Jean Ernest Aubert from the decree of the Orphans' Court for the county of Philadelphia sustaining the exceptions of Thomas H. De Silver and Caroline E. Getz, residuary legatees, and The Pennsylvania Company for Insurance on Lives and Granting Annuities, trustee under the will of George P. De Silver deceased, to the distribution made of the residuary estate of said testator by the Auditing Judge.

At the audit before ASHMAN, J., the following facts appeared: George P. De Silver a citizen of Pennsylvania deceased, .by his will proved June 6th, 1873, directed as follows: "Second: I give and bequeath to my executors and to the survivors or survivor of them, the sum of sixty thousand dollars in trust to invest the same and pay the income therefrom semi-annually to my wife Elizabeth De Silver during her life ; and upon her decease to pay one half of the said principal sum to such person or persons and in such manner as she, my wife, may by her last will and testament duly executed according to the law of her domicile order and appoint; and in default of such appointment, the said one half of said principal shall form part of my residuary estate ; and to pay the remaining and other half of the said principal sum to my brother Thomas H. De Silver and to my sister Caroline E. Getz share and share alike, their and each of their heirs and assigns forever."

He then devised and bequeathed one half of his residuary estate to the said Thomas H. De Silver and Caroline E. Getz, and the other half to his executors in trust for Thomas H. De Silver and Caroline E. Getz for their lives with limitations over; and appointed as executors his wife Elizabeth De Silver, Henry M. Phillips and Francis Avery. Of these Henry M. Phillips alone appears to have acted as trustee, and he was discharged upon July 9th, 1880, when the accountants, The Pennsylvania Company for Insurances on Lives and Granting Annuities was appointed by the Orphans' Court trustee in his stead. His widow, whose maiden name was Elizabeth Claire Aurelie Paley, married the appellant, Jean Ernest Aubert, a citizen of France residing in Paris. After her marriage Mrs. Aubert made her will in the following words:

"I the undersigned Elizabeth Claire Aurelie Paley make the following dispositions:

If I die before my husband, Jean Ernest Aubert, I leave him all my fortune, in full ownership, so that he may dispose of it as he shall deem advisable.

ELIZABETH PALEY.

"Paris, May 18th, 1876."

The will was of the kind known in the French law as holographic, that is, it was written, dated and signed exclusively by the hand of the testatrix. Mrs. Aubert died August 2d, 1883, and her will was duly proved March 15th, 1884, before the Civil Tribunal of the First instance of the Department of the Seine at Paris, and a decree formally entered investing Mr. Aubert with title under the will of testatrix as her universal legatee.

On September 6th, 1877, Mrs. Aubert executed before Ernest Legay, a notary at Paris and two witnesses an Acte de Notariete which (the formal parts omitted) declared "Madame Aubert has by these presents made a donation *inter vivos*, in case he (M. Aubert) should survive her, to M. Aubert, her husband, who accepts it here present, the whole of her property, real and personal which will compose her estate after her death, of whatever value it may be, and wheresoever the same may be situated, without any exception or reserve, that M. Aubert in case of his said survivorship, may enjoy and dispose of said property as something belonging to him in full ownership, from the day of the death of the said donatrix. In case of the existence of children from the marriage of M. and Mme. Aubert, the present donation will be reduced to one quarter in ownership and one quarter for life, of said property. In order to enjoy said life estate M. Aubert will not be required to give security, though he will have to furnish an inventory." This Acte de Notariete was registered at Paris

13 OUTERBRIDGE—29

after Mrs. Aubert's death, on August 17th, 1883. There were no children living at her decease.

The present accountants as trustee for Mrs. Aubert under the will of George De Silver filed their final account upon October 25th, 1883, and at the audit $30,000, the one half of the estate given her for life was claimed by her husband, Aubert, on the ground that the Acte de Notariete operated as an execution of the power of appointment given her in the will of her first husband; and also by the residuary legatee. The audit took place November 27th, 1883—before the probate in France of Mrs. Aubert's will on March 15th, 1884, which consequently was not in evidence. The Auditing Judge however held that the Acte de Notariete was equivalent to a will and operated as an execution of the power of appointment conferred upon her by Mr. De Silver's will. He therefore awarded the fund in dispute to Mr. Aubert and further reported as follows:

"The Auditing Judge is of opinion that the sum of $30,000 and not the securities in which it may be invested passes under the power (see Middleton's Appeal, 41 Leg. Int., 75). He is also of opinion under Bell's Estate, 39 Leg. Int., 430, that payment of the fund including interest due at the date of Mrs. Aubert's death, should be made directly to the appointee under her will.

Subsequently the Auditing Judge re-opened the adjudication for further consideration of the Acte de Notariete, and decided after a review of the French law that the Acte de Notariete differed "both in its character of irrevocability as well as in its form and the manner of its authentication from a will," but that being intended only to go into effect at the death of the testatrix, operated as a valid execution of the power.

The court in banc sustained exceptions filed to the adjudication and the amended adjudication, and awarded the fund to the residuary legatee, in an opinion by PENROSE, J., ASHMAN, J., dissenting. The decision however was withdrawn, and the account re-committed to the Auditing Judge upon proof being made that the will above mentioned of Mrs. Aubert had been discovered at her late domicile.

The Auditing Judge thereupon on June 14th, 1884, filed his final adjudication as follows:

The Acte de Notariete was dated September 6th, 1877, and under it Madame Aubert gave to her husband all her estate absolutely, but provided that in case of the existence of children by her marriage the gift to the husband should be "reduced to one quarter in ownership and one quarter for life." If the interpretation put by the Auditing Judge upon the last

named instrument had prevailed, it would have followed that that instrument, purporting as it did, to convey the whole estate of the grantor, at her death, in terms co-extensive with those used in her will, revoked the latter. But the court decided that the paper of September 6th, 1877, was in no sense a will, such as was contemplated by the donor of the power, and therefore failed to execute the power created by the will of George P. DeSilver. This raises the question whether the estate covered by the power, which was untouched by the deed of 1877, passed under the will of 1876. It seems to be quite clear that a subsequent conveyance by the testatrix which disposed of only part of her own estate, or which failed to dispose of the estate which was under her control, would be a revocation pro tanto only of her will. The cases cited in the note to 1 Jarman, 130, seem to establish this point; and the Act of 8th April, 1833, sections 13 and 14, declares that "no will in writing . . . . . shall be repealed . . . . . otherwise than by some other will . . . . . or other writing declaring the same." If the deed was silent as to the power, and the will either expressly or by legal implication, referred to and executed the power, then the will, to this extent, was unrevoked. If it had been made in Pennsylvania, it would not only be unrevoked, but would be deemed, under the Act of 1879, a valid execution of the power. One obstacle to the recovery by the husband, which existed at the time of the audit, arising from the direction by the donor that the power of appointment in the will should be exercised by a "will duly executed according to the law of her domicil," has been removed by the subsequent proof of the existence of such an instrument. But the argument was used that the donor of the power has himself made the law which shall rule this case, and has declared that the will, which shall execute the power, must be such a will as would be valid for that purpose by the law of France; that the testatrix must be presumed to have framed her will in the light of the French law; and that inasmuch as that law knows nothing of powers of appointment, the testatrix, when she gave to her husband "all her fortune," gave him nothing more than the French law would imply from that phrase. The intent of the testatrix is thus made to depend upon the accident of locality; and although by the very words which she has used an intent to exercise the power would be inferred if she had written them in Pennsylvania, a contrary meaning will be put upon them because she wrote them in France. The broader view would seem to be that the testatrix had quite as fully in mind the property which she controlled by virtue of the will of her first husband and, which was essentially her own, as the prop-

erty which she possessed in her own right. The layman is not apt to draw a nice distinction between these two species of interest, and the recognition of this obvious fact in daily life led to the Act of 1879. It does seem a fallacy to say that because an estate which may be created by a power of appointment is unknown to the French law, no form of testamentary disposition could pass it; it might almost as well be said that the testatrix could not have disposed of her property by designating its value in dollars, because the law of France would have estimated it in francs.

The argument, moreover, assumes too much which declares that the gift by the testatrix of all her fortune constituted the husband her "universal legatee," and therefore gave him only the interest which an heir would have taken in case of an intestacy. The term "universal legatee" is a technical term, in ordinary use in French wills; and in the absence of recognized authority to that effect, cannot be replaced by other expressions. It is sufficient to say that the testatrix did not use it. To make the case of the next of kin good, it should have been shown that a French court, before whom a similar testament had been produced, had decided that a gift of all the fortune of the testatrix would not have comprehended the fortune which was hers under a power of appointment.

Unless the Auditing Judge has totally misapprehended the meaning of decisions in Pennsylvania and elsewhere, the law as laid down in Bingham's Appeal, 14 P. F. S., 351, decides this question. Changing the names of the donor and donee of the power to those of the parties before us, the present case is thus ruled by Justice AGNEW: "The property and the domicil of George P. DeSilver, being within Pennsylvania, the law of this state must govern the interpretation both of the power and the execution of it. . . . . . The exercise of Elizabeth Aubert's power of dominion over the property is necessarily regulated by the law which governs the subject of her dominion. It is not the estate of Elizabeth Aubert, but that of George P. DeSilver, which is the subject of the exercise of the power, and its situs being here, it was therefore controlled by our law." In Sewall *v.* Wilmer, 132 Mass., 131, where Bingham's Appeal is referred to, the donee of the power died domiciled in Maryland, and the donor and the property, which was the subject of the power, were in Massachusetts. The will was void as a good appointment, by the law of the domicil of the donee, but was good by the law of the state of the donor; and the power of appointment was held to have been duly executed. GRAY, C. J., there said (p. 135): "As to the form of executing the power, it would

seem that a will executed in the form authorized by the law of either state, would be sufficient."

The Auditing Judge is of opinion that the decree of distribution heretofore entered should not be disturbed.

Exceptions filed to this adjudication were again sustained by the court in banc, PENROSE, J., filing the following opinion :

The will of Mrs. Aubert made no reference to the will of her first husband ; and as the law then stood (1876) it could not operate as an execution of the power which the latter conferred upon her. As it is presumed that she was aware of the requirements of the law in this respect, it must also be presumed that the omission was not unintentional, but that it was the result of a deliberate wish to dispose only of what was strictly her own, leaving her husband's estate to go, as it may well be supposed he himself would have preferred, to his relations, instead of, to use the language of Chief Justice GIBSON, in Commonwealth v. Stauffer, " to a successor to his bed," and through him to " strangers to be hatched in his nest."

The subsequent deed, inter vivos, was of precisely the same property as that disposed of by the will, viz.: the fortune of the testatrix herself. The latter was therefore revoked and cancelled, under the Act of April 8th, 1833, § 13, as completely and effectually as if it had been put in the fire ; and it is of no importance whatever that in point of fact the mere physical existence of the paper was preserved. It seems idle to suppose that it was retained that an effect which it did not then have might be given to it by the future legislation of a foreign state. Such legislation was not to be anticipated, and its effect would not, as we have seen, be that intended when the instrument was executed and when it was afterwards revoked. Moreover, if such had been the intention, instead of leaving it to be accomplished in this extraordinary manner it would have been expressed at the time and in the paper itself.

That the parties supposed that the will had been entirely superseded by the deed, is shown by the fact that when Mrs. Aubert died the deed only appears to have been proved, while the will was forgotten until the proceedings in this court suggested that it might have an effect never previously contemplated.

That the deed could not operate as an execution of the power has been shown, it is believed, by the opinion heretofore filed upon the exceptions to the original adjudication. The reasons, in brief, are, first, that by the express provisions of the will of Mr. DeSilver the execution could only be by a " will " duly executed, &c., &c., and this instrument, though in some respects partaking of its nature was not a will ; and

second, conceding it to be a will, as the operation of a will of this species—a donation inter vivos—was limited by the French law, of which alone it was a creation, to the estate of the grantor strictly, the intention not to exercise a power over the estate of another was disclosed, *ex vi termini*, by the paper itself, just as effectually as if such intention had been declared in express words ; and the case falls, therefore, within the proviso of the Act of 1879.

The question, therefore, as to what might have been the effect of the Act of 1879 upon the will of Mrs. Aubert had she not revoked it by another instrument, does not arise. The Act can only apply to wills in existence and operative at the death of the testator. It does not attempt to galvanize dead wills. This will was revoked, and that ended it as a factor in the case before us.

The exceptions to the re-adjudication are sustained, and distribution awarded as directed in the opinion heretofore (March 8th, 1884), filed.

ASHMAN, J., filed a dissenting opinion.

Whereupon Aubert took this appeal assigning for error the action of the court in sustaining the several exceptions filed by the residuary legatees to the adjudication of the Auditing Judge ; and in deciding that neither the will of Mrs. Aubert nor her Acte de Notariete was a valid execution of her power of appointment under the will of George P. DeSilver deceased.

From an elaborate summary of French laws agreed upon by counsel it appeared that there were but two forms of gratuitous disposition of property, viz., by gift *inter vivos* and by testament. The Acte de Notariete, though in general an irrevocable gift, has, when executed between husband and wife, a testamentary and revocable character. It is not revoked by the subsequent birth of children, Civil Code 1096, but is void *pro tanto* as to children surviving at the death of the husband or wife making the gift, when the gift to the other is cut down to one quarter in ownership and another quarter in usufruct, or to one half of the property in usufruct only : Civil Code 1094 ; 8 Duranton 283. A gift *inter vivos* can comprise only the present property of the donor and if it comprises property to be acquired in the future it shall be void in that respect : Civil Code 943. But this is not the case with a disposition between husband and wife : Civil Code 947 ; 8 Duranton 5, 7, 17, 500 ; 9 Id. 780, 781. Wills are of two kinds, " that by public act " which is executed before two notaries and two witnesses or before one notary and four witnesses, Civil Code 971, and (2) the holographic testament which is one written, dated

and signed exclusively by the hands of the testator without other formalities: Civil Code, 970.

*James Parsons* for appellant.—The Acte de Notariete is a will because it is a revocable disposition of Mrs. Aubert's estate to take effect at her death. The court below while calling the Acte a deed, at the same time gave it the effect of a will by making it pass the property Mrs. Aubert owned at her death, and by making it revoke the will of 1876. It is virtually a will. The essence of the definition of a will is that it is a disposition to take effect after death. The form of the instrument is immaterial if its substance is testamentary: Paxson, J., in Wilson *v.* Van Leer, 7 Out., 600; Williams on Executors, part 1, book II, chap. II, § 3; Turner *v.* Scott, 1 P. F. S., 126; Book *v.* Book, 8 Out., 240; Frew *v.* Clarke, 30 P. F. S., 170. In Schad's Appeal, 7 Norris, 111, an assignment of a policy of insurance "after my death" was held to be a will: Watkins *v.* Dean, 10 Yerger, 321; Gage *v.* Gage, 12 N. H., 371; Robinson *v.* Schly, 6 Ga., 515; Att'y Gen. *v.* Jones, 3 Price, 371; Thorold *v.* Thorold, 1 Phillimore, 9; Crain *v.* Crain, 21 Tex., 790; Gillham *v.* Mustin, 42 Ala., 365; Doe d. Cross *v.* Cross, 15 L. J. N. S., 217; Wheeler *v.* Durant, 3 Rich, Eq., 452. In re Belcher, 66 N. C. 51; Symmes *v.* Arnold, 10 Ga., 506; Shingler *v.* Pemberton, 4 Hagg, 356; Mosser *v.* Mosser, 32 Ala., 551; Jaggers *v.* Estes, 2 Strob. Eq., 343. The Acte is a perfect execution of the power under the rule of construction established by the Act of June 4th, 1879, P. L., 88. There is therefore no need to call for the equitable interpretation of the court in favor of Mr. Aubert. It is a valid execution of the power even if regarded as a deed, because testamentary in its nature: Sugden on Powers, chap. 7, § 3, part 15; 1 Chance on Powers, p. 300 § 828. The Acte moreover is a will within the meaning of the donor of the power whose will must be construed by Pennsylvania law because it disposes of property to be here administered. The power will therefore be properly executed by any instrument which would have in France the same efficacy which a will has here. It is immaterial by what name the instrument is called, otherwise a Pennsylvania will would have to be construed by the French code: Bingham's Appeal, 14 P. F. S., 345; Sewall *v.* Wilmer, 132 Mass., 131. Besides, the appellant claims under the will of 1876. If the Acte is not a will it must be a deed, and as a deed, cannot revoke the will of 1876. The will has been proved under the French law, and the decree of the French court upon it is conclusive here: Miller *v.* James, L. R. 3 P. D. 4; D'Huart *v.* Harkness, 34 Beav., 324. The disposition of property by a deed is by its nature specific, and therefore cannot adeem or sat-

isfy a general bequest of all the property owned by the testator at his death : Bothamly *v.* Sherson, L. R. 20 Eq., 304; Walker's Estate, 3 Rawle, 229. If the Acte is a deed the will of 1876 will stand and pass by its general terms the residuum of Mrs. Aubert's estate. If the Acte is a will, it makes, together with the will, but a single testamentary disposition. A later will will revoke a former one only so far as they are inconsistent with each other: Williams on Executors, part I, book II, chap. III, § 2 ; Goods of Petchell, 3 P. & D., 153 ; Goods of Donaldson, 3 P. & D., 45 ; Lemage *v.* Goodban, 1 P. & D., 57 ; Hegarty's Appeal, 25 P. F. S., 503 ; Cochran *v.* Young, 8 Out., 333 ; Price *v.* Maxwell, 4 Casey, 23. It is immaterial that neither the will nor the Acte alludes to the power, for the Act of 1879, affords a rule of construction which prevails unless the " contrary intention " expressly appears in the will. It cannot be inferred from extrinsic circumstances: Act June 4th, 1879, P. L., 88 ; Stillman *v.* Weedon, 16 Simons, 26 ; Boyes *v.* Cook, L. R. 14 Ch. Div. 53.

Mr. Parsons also filed with his brief the opinion of Prof. Accarias of the Law Faculty of Paris upon the questions in the case.

*John G. Johnson* for the appellees :—The Acte de Notariete or donation *inter vivos* revoked the holograph will of 1876. It matters not that the Acte could not take effect as a will, for it demonstrates the intention to revoke, and therefore amounts in law to a revocation : Shove *v.* Pincke, 5 Term, 129 ; Dempsey *v.* Lawson, L. R. 2 P. D., 105 ; Price *v.* Maxwell, 4 Casey, 39 ; Cottrell *v.* Cottrell, L. R. 2 P. & D. 399 ; Henfrey *v.* Henfrey, 7 Eng. Eccles., 175 ; Powell on Devises, 341 ; Simmons *v.* Simmons, 26 Barb., 75 ; Sotheran *v.* Dening, 20 Ch. D., 99. The Act of June 4th, 1879, was not in force in 1877 when the Acte de Notariete was made. The latter revoked the will of 1876, and being revoked two years before the passage of the Act of 1879 was not by it galvanized into life. The will of DeSilver, directed expressly that the power should be executed by will " executed according to the law of her domicile." Therefore Bingham's Appeal, 14 P. F. S., 345, is not in point, for the rule there laid down applies only to cases where there is no direction in the instrument creating the power. It is very clear that the Acte de Notariete was not a will according to the law of France ; and a mere equivalence of function is not enough ; for the instrument must be " duly executed " as a will, and this was not, for it was neither holographic nor executed before two notaries and two witnesses, or one notary and four witnesses. It was in fact executed as a donation *inter vivos*, before one notary and two witnesses. Not only was the Acte

de Notariete not a will by the law of France but it was not a will by the law of Pennsylvania. It was a mere agreement and was not transformed into a will by the power of revocation. The question is not whether the beneficiary takes any title anterior to death, but whether the instrument under which he claims has any effect *as an instrument* before the death of its maker: Frew *v.* Clarke, 30 P. F. S., 179 ; Habergham *v.* Vincent, 2 Ves. jr., 230 ; Paul *v.* Hewetson, 2 M. & K., 434 ; Bell's Principle of the law of Scotland, § 1681; Majoribanks *v.* Hovenden, 6 Ir. Eq. 238, Drury 11. Note of Sugden in 2d Ed. of Sugden's Powers, page 215 ; on Attorney General *v.* Jones, 3 Price, 384. The Act of June 4th, 1879 by its wording applies only to a will strictly so called, and does not apply to a mere convention or agreement; and if it did, the wording of the Acte de Notariete brings it within the exception of the Act of Assembly. She gives all " which will compose her estate after her death." This amounts to a limitation of the bequest.

Mr. Justice Paxson delivered the opinion of the court October 5th, 1885.

The will of George P. De Silver, a citizen of this state, was proved June 6th, 1873, by which he gave $60,000 in trust, to invest the same and pay the income as follows : " To my wife Elizabeth DeSilver, during her life, and upon her decease to pay one half the said principal sum to such person or persons, and in such manner as she, my wife, may by her last will and testament duly executed according to the law of her domicil order and appoint, and in default of such appointment the said one half of the said principal sum shall form part of my residuary estate."

The widow of Mr. De Silver married the appellant, who survived her. At the time of her death she was domiciled in Paris, France. Previous to her death she attempted to exercise the power given her by her first husband's will, in favor of her second husband. This was probably not the direction Mr. De Silver intended his money to go. But with that we have no concern. If the power was legally executed the second husband will get the money. We shall treat it as a dry question of law. The contest is between the husband on the one hand, and the residuary legatees, who are the brother and sister of the testator, on the other. The fund is in the hands of the Pennsylvania Company for Insurance on Lives and Granting Annuities, trustee in place of Henry M. Phillips, deceased, who was the original trustee under Mr. De Silver's will.

When the appellant appeared before the Orphans' Court to claim this fund he produced an *Acte de Notariete*, executed by

Mrs. Aubert, his wife, on the sixth of September, 1877, and disposing of her property at her death as follows: " To Monsieur Aubert, her husband, who accepts it, here present, the whole of her property, real and personal, which will compose her estate after her death, of whatever value it may be, and wheresoever the same may be situated, without any exception or reserve; that Monsieur Aubert in case of his survivorship, may enjoy and dispose of said property as something belonging to him in full ownership, from the day of the death of said donatrix."

He also produced a will executed in Paris by Mrs. Aubert, dated May 18th, 1876, and which contained the following clause: " I the undersigned Elizabeth Claire Aurelie Paley make the following dispositions: If I die before my husband, Jean Ernest Aubert, I leave him all my fortune, in full ownership, so that he may dispose of it as he shall deem advisable."

By the law of France testaments are of two kinds, viz. 1. By public act, which must be executed before two notaries in the presence of two witnesses, or before one notary in the presence of four witnesses; and 2. By holograph, which is not valid unless it has been written, dated and signed exclusively by the hand of the testator. The will in question was a holograph will and appears to have been properly executed. The *Acte de Notariete* was a donation *inter vivos.* We need not discuss the latter paper at length for the reason that, according to the law of France, it is not a testament. Such gifts are conventional in their nature, partaking of the character of agreements or covenants. Ordinarily they are irrevocable, and can only affect property then the possession of the donor. In the case of husband and wife, however, they are revocable, and may include property to be acquired in the future.

It is conceded that the holograph will of 1876 was properly executed and that it is a French will. It is contended, however, that it is not effective to pass the fund, for two reasons: 1st. That it was revoked by the subsequent *Acte de Notariete,* and 2d. That if not revoked, it contains no reference to the power, and is not an execution thereof.

The usual mode of revoking wills is by a subsequent will or codicil containing an express clause of revocation, or provisions which are inconsistent with the former will: Jarman on Wills, 336. And the same writer lays down the doctrine, which I do not understand to be seriously disputed, that an instrument purporting to be a conveyance, but incapable of taking effect as such, may operate to revoke a previous devise. But the reason of this rule evidently is, that the subsequent conveyance was inconsistent with the devise, and disclosed

an intent to revoke it. But here the *Acte de Notariete* is in entire harmony with the previous will. It passed the same estate and to the same person. It was evidently intended to confirm the will. It was not necessary; it adds no strength to the will, but to say that it revokes what it was intended to make sure is a contradiction of terms.

It is true there is an apparent difference in the disposition of the property by the two instruments. By her will Mrs. Aubert gives her husband " all my property in full ownership, so that he may dispose of it as he shall deem advisable," while by the *Acte* the gift is reduced in the event of there being children by the marriage to " one quarter in ownership and one quarter for life." But this difference is only apparent. I understand by sections 913, 916 and 920 of the French Code, that the *Acte* would not be revoked by the subsequent birth of children, because the said Code would, in such event, reduce the portion of which disposition had been made in the gift *inter vivos* exactly as in the testament. So that this provision in the *Acte* was surplusage; the Code would have written it in that instrument in case children had been born of the marriage.

The second objection to the will presents a question of more difficulty. As before observed, the will makes no reference to the power; it purports only to pass the estate of Mrs. Aubert; the fund in question is a part of the estate of George P. DeSilver, over which he gave his wife a power of appointment. It is very clear that by the law of Pennsylvania as it existed at the time this will was written, the will would not have been an execution of the power. But after the date of the will and before the death of Mrs. Aubert, the Act of 4th June, 1879, P. L. 88, was passed by the legislature of this state, the third section of which provides inter alia that " a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will." And the fourth section enacts that " this Act shall operate and go into effect as to the wills of all persons who shall die after the date of the Act."

It was argued with much plausibility that the Act of 1879 could not be applied in this case for the reason that inasmuch as it was not in existence when the will was executed, Mrs. Aubert could not have had it in contemplation when she made said will; hence her omission to refer to the power was not an

accident, but the result of an intent to give her husband only her own estate. This course of reasoning, however, ignores the purpose of the Act, which was to make a general will execute the power in all cases when a contrary intent does not appear upon the face of the will. When such contrary intent does appear the Act has no effect, for it was not intended to thwart the intent of the testator, but to carry it into effect. Experience had shown that in many instances a power had been defectively executed through ignorance or the carelessness of the draftsman of the will. The Act declares substantially that a gift, or devise of all of a man's estate, shall carry with it property over which he had a power of appointment by will; in other words that a general will is an execution of the power. And it assumes that such was the intent of the testator unless the contrary intent appears by the will. It is true we must presume that Mrs. Aubert knew the law when she made her will, and that as it then existed a general will would not execute a power. But the same is true of the many other persons whose failure to properly execute a power led to the passage of the Act of 1879. The recognized presumption is that no one is ignorant of the law, yet every intelligent man knows that this is an extremely violent presumption; it is a convenient, if not necessary fiction, nothing more. We cannot impute to Mrs. Aubert a greater knowledge of the law upon this subject then was possessed by hundreds of others who have failed in the execution of powers. We would equally err in imputing to her less. The probability is that she knew nothing about it.

The Act of 1879, as we have seen, operates upon the wills of all persons who shall die after the date of the Act. It is not confined to wills which are executed after the date of the Act. The reason of this is plain. The Act is based upon the fact that testators in many instances are either ignorant of the law or neglect to comply with it. In order that their intent may not by such means be defeated, it declares that under certain circumstances a general will shall execute a power. We are of opinion that this will comes within the Act of 1879.

At first I was disposed to regard the provision in Mr. De Silver's will that the power should be exercised by his wife in and by her "last will and testament, duly executed according to the law of her domicile" as a restrictive clause. Subsequent reflection has changed my view upon this point and I am clear that it was intended as an enabling clause. Mr. De Silver was a citizen of this state and we have no reason to suppose he would not have been satisfied with an appointment in conformity with Pennsylvania law. But his wife was of French birth and he evidently contemplated her being domi

ciled abroad. He probably knew if he made no provision upon the subject the validity of the appointment must be determined by the law of this state. This would require a knowledge of our laws on the part of whoever prepared her will in a foreign country, and might involve a failure. In order to facilitate the execution of the power he provides that it may be done in conformity to the law of her domicile.

It is too plain for argument that the donee of this power intended to execute it and give the fund to her husband. It was said in Bingham's Appeal, 14 P. F. S., at page 349: "It may be admitted that the intention of the donor of a power is the true criterion to determine its execution."

> The decree is reversed at the cost of the appellees; the adjudication of the auditing judge is confirmed, and it is ordered that distribution be made in accordance therewith.