PEARCE v. LEDERER, Internal Revenue Collector.

(District Court, E. D. Pennsylvania. November 28, 1919.)

No. 5848.

1. POWERS &⊃36(2)—LAW GOVERNING EXERCISE OF POWER OF APPOINTMENT.
   Under the law of Pennsylvania the question of the effective exercise of a power of appointment is determined by the domicile of the donor of the power, not of the donee.

2. WILLS &⊃682(2) — INTEREST OF BENEFICIARY UNDER SPENDTHRIFT TRUST.
   Where property has been bequeathed or devised to a trustee on a spendthrift trust, the beneficiary has nothing until and except as he receives, and all of the property until actually received by him remains the estate of the first testator, although the beneficiary may be the donee of a power of appointment, and may exercise it.

3. WILLS &⊃692. 693(1)—EXERCISE OF POWER OF APPOINTMENT UNDER SPENDTHRIFT TRUST.
   Where the beneficiary of a spendthrift trust by his will exercises a power of appointment of which he is donee, under the law of Pennsylvania his appointee takes, not under his will but under the will of the donor.

4. INTERNAL REVENUE &⊃8—TRUST ESTATE NOT SUBJECT TO INHERITANCE TAX.
   The principal of a spendthrift trust fund, bequeathed by will by the beneficiary of the trust under a power of appointment given him, although included with his other estate, and thereby made subject to general administration by his executor and to his debts, *held* under the law of Pennsylvania not subject to inheritance tax as part of his estate, under Act Sept. 8, 1916, § 202 (Comp. St. § 6336½c).

At Law. Action by John W. Pearce, executor of Alfred Pearce, deceased, against Ephraim Lederer, Collector of Internal Revenue for the First District of Pennsylvania. Judgment for plaintiff.

Arthur U. Bannard, of Philadelphia, Pa., for plaintiff.

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. Plaintiff sues in assumpsit to recover the sum of $1,590.61, with interest from November 16, 1918 (less $10.32), claimed as an unlawfully exacted inheritance tax on the estate of which the plaintiff is the executor. On August 30, 1918, the plaintiff was notified of the assessment of an additional tax of $1,557.33, aggregating, with the 10 per cent. per annum penalty imposed to November 16, 1918, the above sum of $1,590.61.

The theory of liability upon which the assessment was made, and upon which the lawfulness of the tax is now asserted, is that Elizabeth Pearce, the mother of the plaintiff, by her will created a spendthrift trust for the benefit of her children, of whom the plaintiff's decedent was one, under which the children were given the income from this trust fund for life, with power of testamentary disposition. Plaintiff's decedent died seized and possessed of an estate of his own, besides being donee of the foregoing power. The plaintiff was acting in a dual capacity. He is trustee under the mother's estate, and as such has in his hands the trust fund to which reference has been made, and he is also the executor of his brother, who was one of the life beneficiaries of this trust estate and donee of the testamentary power above mentioned. The will of the plaintiff's decedent recited the power, and declared it to be his intention by will to exercise that power, and to include the fund to which that power applied in the disposition which he made of his estate.

Inasmuch as it is the settled law of Pennsylvania that property thus held in trust passes, when title does pass, through and by the will of the donor of the power, and as part of the estate of such donor, and not as part of the estate of the donee, it follows, as a consequence, that in strictness the plaintiff was called upon to account for the property in his hands as trustee of his mother's estate so far as affects this trust fund, and as the executor of his brother's estate so far as affects the remaining estate and property in his hands. In the accounting and distribution which he made as such executor, however, there was brought in and included that portion of the principal or capital sum which was in his hands as trustee of his mother's will, which was disposed of through and by the exercise of the power of appointment which had been given to his brother by the mother's will.

The plaintiff, claiming that only the property in his hands as executor was liable to payment of a tax, made his return and paid the tax on this basis. The United States, claiming that the share of the trust fund disposed of as above stated should be also included in arriving at the sum subject to the payment of the tax, brought this part of the trust fund into the sum upon which the tax should be levied. The theory upon which the payment of the tax now sought to be recovered was levied is that this trust fund was subject to the tax. The theory of the case of the plaintiff is that this trust fund should not be included in the tax assessment.

This presents the question to be decided. It is brought up on motion for a judgment notwithstanding the affidavit of defense. The rule is taken on the assumption that technically the United States is not a party to the present cause, but that the action is one against the collector as an individual. Counsel for defendant acquiesces in this view. There is no dispute between the parties, other than the controversy over the broad question above suggested, and all other findings are concededly to be made in favor of the plaintiff. We mention this, because counsel for the plaintiff has brought into his brief a discussion of his right to judgment now in his favor, if his position on this main question is upheld. In the brief submitted on behalf of the defendant, which we now have before us, every other question than this main question is admittedly out of the case, and because of this has not been considered.

In order to meet the question above outlined, it may be premised that the death of the donor of the power was before the act of Congress imposing the tax (Act Cong. Sept. 8, 1916, c. 463, 39 Stat. 756), and the death of the donee was after that date. The text of the act of Congress is, so far as it bears upon the controversy before us, that the tax is imposed "upon the transfer of the net estate of every decedent dying after the passage of this act." Section 201 (Comp. St. § 6336½b). The sum which in any given case represents the tax thus imposed is to be found by estimating the value of the estate of the decedent "to the extent of the interest therein of the decedent at the time of his death, which after his death, is subject to the payment of the charges against his estate and the expenses of its administration, and is subject to distribution as part of his estate." Section 202 (section 6336½c). In providing for the deductions to be made from this gross valuation, in order to determine the net estate subject to the tax, there is included, after an enumeration of specific deductions, "such other charges against the estate as are allowed by the laws of the jurisdiction, * * * under which the estate is being administered." Section 203 (section 6336½d).

We have also been referred by counsel for defendant to the act of assembly of Pennsylvania of June 4, 1879 (P. L. 88), and to the Act of Congress of February 24, 1919 (40 Stat. 1057, c. 18). We do not quite see the bearing of either of these statutes upon the decision of the question before us. It is not asserted by the plaintiff that Congress could not have subjected property (for it is property in a very substantial sense) in the form of a right or power of appointment to the payment of the tax. The proposition set up is that Congress did not subject this property to the tax, inasmuch as the act of 1919 was not passed until after the death of this decedent. It is, of course, not claimed that this act subjects this estate to the payment of the tax. As a declaration, and in this sense an indication of legislative intent, the implication is rather in plaintiff's favor than against it, because the declaration of Congress is that we did not tax property of this kind by the act of 1916, but we do now tax it by the act of 1919.

The sole bearing which the act of assembly of Pennsylvania of 1879 has upon the subject of the exercise of a power is to declare what in

Pennsylvania shall be deemed an effective exercise of that power. The law, as it was before it was changed by the legislative enactment, was that the power could be exercised only through and by a clear-cut reference to the power and a clear declaration of the donee to exercise it, and it could be exercised only in strict accordance with the mode and manner of its exercise laid down by the donor. The real change made by legislation was that a general devise, which before the statute would not have been a good exercise of the power, should thereafter be deemed to be a lawful and effective exercise, unless a contrary intention appeared by the will. In other words, there is a complete bouleversement of the principles of law involved. Before the enactment of the legislation of this kind, the instrument asserted to be an exercise of the power must, among other things, disclose a clear intention to exercise. After that legislation, it was assumed to have been exercised unless the contrary intention was disclosed.

The general proposition involved is admitted to be one which supports the claim of the plaintiff. The thought is advanced, however, that a testator, who subsequently dies seized and possessed of an estate of his own, and who was also the donee of a power of appointment, might by his will so blend the estate which was his individual property with the other estate over which he had the power of appointment as to subject both of them to liability for the payment of the inheritance tax. Before taking up the consideration or discussing the cases cited in support of this proposition, it is well to have a firm grasp of the principles of law which should be in mind in order to enable us to apprehend the rulings made and the reasoning which controls these rulings.

[1] We start off with the principle, well established in Pennsylvania and in a number, if not all, of the other states, that the question of the proper, the lawful, and in this sense the effective, exercise of a power of appointment, is determined by the law of the domicile, not of the donee, but of the donor, of the power. It follows that if, to instance a concrete case, a power of appointment was given under and by the will of a testator, who was domiciled at the time of his death in Delaware, to a donee, who exercises that power of appointment by a will made in Pennsylvania and who there died, the question of the effective exercise of the power would be determined, not by the law of Pennsylvania, but by the law of Delaware, and if the will which was made was not a good exercise of the power under the laws of Delaware, the appointee would not take, notwithstanding the fact that the exercise would have been good under the laws of Pennsylvania. Bingham's Appeal, 64 Pa. 345; Aubert's Appeal, 109 Pa. 447, 1 Atl. 336.

[2] Another proposition is that, where property, as here, has been bequeathed or devised to a trustee who holds under a spendthrift trust, the beneficiary has nothing until and except as he receives, and all of the property until actually received by the beneficiary remains the estate of the first testator, notwithstanding the fact that the beneficiary may be the donee of a power of appointment by will and may exercise it.

[3] Still another proposition is that the appointee, who takes, takes, when he takes, not under the will of the donee of the power, but under the will of the donor. When the power of appointment is general, the donee may exercise that power in favor of his creditors, or in favor of those who have a claim growing out of the administration of his estate, as he may exercise it in favor of any one or in any way he pleases; but the proposition holds good that the appointee, whoever he is, takes under the will of the donor, and if he is the creditor of the donee, and has been made the appointee because he was such creditor, he nevertheless takes qua appointee, and not qua creditor. In other words, the appointee takes as a beneficiary, and not as a creditor, precisely as the creditors of a son would take to whom a father had bequeathed legacies measured by the claim of debt which they had against the son. Burt v. Herron's Ex'rs, 66 Pa. 400.

[4] The argument is made which, on its face, has at least plausibility, if not force, that as section 202 of the taxing act (Comp. St. § 6336½c) directs that all property which, after the death of the decedent whose estate is subject to the tax, "is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate," shall be subjected to the inheritance tax, and as this testator has subjected this property to the payment of his debts and to the administrative expenses of his estate, he has thereby brought it within the taxing act.

It is to be observed, however, that there are three conditions in this clause, which are put, not in the disjunctive, but in the conjunctive. It is not estates which are subjected to the payment of debts or estates which are subjected to administrative expenses or estates which are distributable as part of the estate of the decedent whose estate is taxed, but it is an interest or property which responds to all of these conditions which is to be valued and included within the taxable property. It is doubtless well not to lay much stress upon this mere verbiage of the act of Congress, because it is well recognized that conjunctive and disjunctive prepositions are very laxly and loosely used by legislators, as well as other people, and because of this the courts have exercised a wide latitude in the construction of legislative enactments, and the word "and" is often construed to mean "or." It is to be further observed that the words of the taxing act which describe the property to be taxed describe it as property which is "subject to" the payment of his debts, not property which by his will he charges with the payment of his debts, and it is only by seizing upon the expression "after his death" that the property now in question could be said to be subject to the payment of debts.

We are not inclined, however, to lay stress upon the distinction here suggested, because this act of Congress may be construed to mean any property upon which creditors, qua creditors, have a claim, no matter how their claims arise. The proposition upon which we do lay stress, however, and upon which we place reliance as a proper ground upon which the question before us should be ruled, is the distinction before noted, that creditors who take through and by the exercise of a power of appointment take, not because they are creditors, but because they are appointees, and take, not under the will of the donee, but under

the will of the donor. It is true that they have been made appointees because they were creditors, but they emphatically are not creditors because they are appointees.

It is admitted that the question before us is to be determined in accordance with the law of Pennsylvania. In consequence, counsel for the defendant have cited the Pennsylvania cases upon which they rely. We pass without comment cases ruled in other jurisdictions, because it is conceded that the doctrines there laid down have been rejected in Pennsylvania.

The first case cited is that of Commonwealth v. Duffield, 12 Pa. 277. The opinion in that case was delivered by Chief Justice Gibson, who by general accord has been given a premier position among the lawyers of Pennsylvania. The ground of the ruling in that case is made perfectly clear, and it is that the property which passes by virtue of a power of appointment not merely is not, but cannot possibly be or become, the property of the donee or form part of his estate.

Commonwealth v. Williams' Executors, 13 Pa. 29, admittedly lays down the same proposition, which is involved in the other proposition that the appointee takes, not under the will of the donee, but under the will of the donor. The critical stage in the argument made on behalf of the defendant in its progress to its conclusion is reached just here. The propositions above stated are admitted to be sound, but it is averred "that the donee may, in the absence of contrary instructions by the donor, do voluntarily what the English courts of equity compel him to do." Let us see if this is true, or possibly can be true. The English courts subjected the property to the payment of debts because it was the law of England that the donee of a general power of appointment was ipso facto given such an estate in the gift of the donor as to subject it to all the liabilities to which his own estate was subject. The courts reasoned themselves to this conclusion by following the line of thought that, inasmuch as the donee had the power to give the property to his creditors if he chose, and as they were of the opinion that he should do so, it followed that these courts looked upon it as if that thing had been done. This, it is to be noted, is the very line of thought which Judge Gibson combats, and the doctrine deduced is the very doctrine which is repudiated in Pennsylvania.

Huddy's Estate, 236 Pa. 276, 84 Atl. 909, is relied upon, not for what it decides, but for what the opinion expresses was not being decided. The will of the donee in that case did not direct the payment of debts, and we are asked to draw the inference that, because the court made the distinction which it did make between wills which contained a direction for the payment of debts and those which did not, ergo if there had been in the Huddy estate the direction to pay debts the conclusion reached would have been the opposite of the conclusion which was reached. We think this inference would be justified. We are asked, however, to draw the further inference that, because creditors would have been awarded their just claims in the Huddy estate if the will had so directed, it is the law of Pennsylvania that the estate of the donor is liable for the debts of the donee. Let us see if this second inference is justified.

The proceeding there, it is to be noted, was one of distribution. Emma Huddy was the donor. The gift was of a sum of money to her executors in trust to pay the income to her granddaughter for life, with a general power of appointment in the granddaughter. The granddaughter married, and by her will gave a number of pecuniary legacies, and the residue of her estate she directed to be divided into two equal portions, one of which she gave to her brothers and sisters, and the other of which she gave to her husband as long as he should remain single; this share being subject to a trust in favor of her sisters upon the death or marriage of her husband. The husband elected to take against the will. It is to be observed that the husband would take whatever he took under the intestate laws, and therefore would share in nothing except the estate of his deceased wife. It is further observed that the adjudication made was in the estate of Emma Huddy, not of Helen Moore. The auditing judge gave the whole fund to the sisters and brother and to the sisters, one-half to each of these two classes. There was no claim upon the part of any one that the fund should be awarded to the executors of the donee, but the court in banc of its own motion so awarded it. An appeal was taken from this decree.

The argument on behalf of the appellant laid down the general proposition that under the law of Pennsylvania appointees took under the will of the donor, not the will of the donee, and distinguished the cases which had been ruled by the orphans' courts of Philadelphia upon the ground that in every one of these cases the payment of debts had been directed. It was further pointed out that the courts of the other counties in the state, or at least some of them, had refused to follow the Philadelphia rule. The decree from which the appeal was taken was made upon the proposition that the creditors of the donee had claims against her estate, and as she had blended her own property with that over which she had the power of appointment, the latter fund should go to her executors. The decree was reversed upon the two propositions—one that there was no occasion to apply the act of 1879, inasmuch as the donee had a sufficient estate to pay all the legacies she had bequeathed without calling upon the trust fund, and therefore there was no justification to assume that she intended to exercise the power given to her; and the other that the trust fund was not part of the estate of the donee, but wholly that of the donor. The effect of a blending was expressly not ruled, for the reason that in the opinion of the court that question was not before them.

Browne's Appeal, 244 Pa. 248, 90 Atl. 566, which was cited in the adjudication in the estate of the donor here, has no bearing upon the question before us, as the question there was whether or not the one exercising the power of appointment possessed that power.

This leaves only the Philadelphia orphans' court cases to be considered. Some expressions have crept into the reports of the Philadelphia cases which, if casually read, seem to give some measure of support to the defendant's argument. It is these expressions which provoked the dissenting comments from the courts of some of the other counties in the state. The appearance of support given to the argument on be-

half of the defendant in the instant case is really due to the conclusion reached in some of these cases, which was that the estate of the donor over which the donee had the power of appointment was distributable to the creditors of the donee. This, however, has absolutely no significance, because it will be found that there is nothing in any of these cases inconsistent with the recognition and application of the principle above formulated.

The doctrine or principle is (as before stated) that the whole subject-matter of the power belongs to the estate of the donor, and is no part (nor can the donee, by any act of his own, make it part) of the estate of the donee. If the donee is given a general power of appointment, he may of course exercise that power in favor of his creditors, as he may exercise it in favor of any one else. If he exercises it in the form of a direction to his executors to pay his debts, the creditors take, but (as already several times stated) they take, not qua creditors, but qua appointees. It is perfectly true, as Judge Lamorelle remarks, that in the process of getting ,to the creditors of the donee what has been given to them it is practically convenient to give the fund to the executors of the donee, and that the distribution should be made to the creditor appointees as if they took as creditors. In consequence of this, what is done takes on the appearance of a finding that the power of appointment fund is subject to the payment of the debts of the donee.

It will be observed, however, that the proposition is wholly. an "as if" proposition, and that the direction of the donee to his executor to pay his debts out of the appointment fund is really the making of the executor the appointee of the donee to the amount of such debts and trustee for the creditors, and thus receiving the fund as such appointee, he distributes it to those who are the creditors just as if they were getting their money as creditors. It still remains wholly true that they get what they get, not because they are creditors, but because they are appointees, although it is also true that they have been made appointees because they were creditors.

If the Philadelphia orphans' court cases and the cases ruled by the orphans' courts of other counties are read with this distinction in mind, it will be seen that in every case what was ruled was entirely consistent with the principles laid down by Chief Justice Gibson and the other justices of the Supreme Court. The real purpose of invoking the "blending" of the estates is to enable the courts to determine whether the donee by his will intended to make his creditors appointees of the appointment fund, or whether he intended them to be paid out of his individual estate. Stokes' Estate, 3 Pa. Co. Ct. R. 193; Horner's Estate, 4 Pa. Co. Ct. R. 189; Fell's Estate, 14 Pa. Dist. R. 327; Huey's Estate, 17 Pa. Dist. R. 1030; Pearce's Estate (not reported); Kensel's Estate, 21 Montg. Co. Law Rep'r (Pa.) 37; Brewer's Estate, 33 Pittsb. L. J. (Pa.) 161.

Much may be said in favor of the proposition,·as one founded upon sound legal principles, that one who is given the usufruct of property, together with the power of disposition, is the owner of that property, and should not be permitted to hold it as against his creditors. We do not see that anything is gained by dragging in the supposed equity of

creditors, nor resorting to any principle of equity, as distinguished from the law. Indeed, the equity of creditors is by no means clear. They have their legal rights, and these spring from the policy of law that the property of every man is subject to the payment of his debts, and that, whenever a man has every interest in property which full ownership could give him, he is the owner, with all the consequences of ownership. Such is the law in some jurisdictions, but it is not the law of Pennsylvania. The Pennsylvania doctrine is that the donor held his property clear of all claims of the creditors of any one else, and if he chose to create what is in effect a spendthrift trust in favor of his donee, the property so given is not subject to the claims of creditors of the donee. The only way of overthrowing this doctrine is by establishing a policy of the law which may be expressed in the paradox that property cannot be given to any one without property being given to him.

In order that the judgment entered in this case may have a definite date, no judgment is now entered, but plaintiff is given leave to enter judgment; the court being of opinion that the rule for judgment should be made absolute.