# Barton's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*William Carson Bodine* and *Paul Freeman*, for next of kin, exceptants.

*Lloyd J. Schumacker*, guardian ad litem, exceptant. *Newbourg & Grubb*, contra.

VAN DUSEN, P. J., December 24, 1942.—Emily Barton in 1882, at the age of 22, when domiciled in Pennsylvania, made a deed of trust to a trust company in Pennsylvania. The trust was to pay the income to herself for life, without liability to creditors, etc., and the principal was given as she should direct by will. If the power of appointment was not exercised the principal at her death was given to her children and their descendants and, in default of children, to her next of kin as if she had died the owner. Thereafter she became domiciled in New Jersey, and died leaving a will probated in New Jersey, in which she gave to the Jefferson Medical College Hospital:

"All the rest, residue and remainder of my estate, real, personal and mixed of whatsoever nature and wheresoever situate, including all lapsed legacies, lapsed bequests, lapsed sums of every nature and kind arising from any and all personal property, sales of real estate held in my residuary estate, principal to pay annuities in case of death and also including the principal of the trust funds over which I am given the power of appointment by the will of Susan R. Barton, deceased, and in execution of any and all powers given to me and contained in the said will of the said decedent . . ."

She did not mention the power which she had under her own deed of trust.

The auditing judge held that the question whether her will exercised the power of appointment was to be determined by the law of the situs of the trust and that this was in Pennsylvania. As the will operated as an exercise of the power in Pennsylvania by virtue of section 11 of the Wills Act of June 7, 1917, P. L. 403, the auditing judge awarded the fund to the residuary legatee under the will. It was asserted that under the law of New Jersey the will of the appointor did not

exercise the power. Claim for the fund was made by the next of kin who would take in default of appointment, and they filed exceptions to the adjudication.

The A. L. I. Restatement of Conflict of Laws, §288, says:

"If a power to appoint movables by will is created by a will, the question whether it is exercised by a general bequest not specifically mentioning the power is determined by the law of the domicil of the donor of the power at the time of his death."

The text writers agree that the weight of authority supports this statement: 15 C. J. S. 936; 4 Page on Wills (1941), sec. 1649; 87 U. of P. Law Rev. 403, 417, 422, 425; 38 Harvard Law Rev. 661, 666; Minor on Conflict of Laws, 353, sec. 150; Wharton on Conflict of Laws, 1308, sec, 590 (a) ; Notes by Bigelow to Story's Conflict of Laws (8th ed.), 650, sec. 473 (a) n. (a) ; Goodrich on Conflict of Laws, 458; Beale on Conflict of Laws, sec. 288.1. The rule is supported by the Pennsylvania case of Bingham's Appeal, 64 Pa. 345. See also Aubert's Appeal, 109 Pa. 447.

We start with this statement because most of the cases are concerned with powers created by will and because the law with respect to such powers is well settled. The stock reason which is given for the rule is thus stated by Professor Beale (sec. 288.1) :

"The settled doctrine is based upon the view that the donee is acting, as courts have said, as the donor's hand, and not their own will, in making the appointment; and the donor's will, as interpreted by the law and usage of his domicil, should be effective."

This seems to be the reasoning in Bingham's Appeal, supra.

We suggest that it would be more accurate to say (as the auditing judge in substance has said) that it is the law of the situs of the trust which is effective. In the case of a power created by will, the situs is necessarily at the testator's domicile, for that is the

controlling factor in determining the place to probate and administer his will. As the author of the article in the Harvard Law Review says (speaking of the personal as well as real property) :

"First, it must be recognized that the law of the *situs*, that is, of the territorial sovereign of the jurisdiction in which the property is actually located, passes the title to the property in every case of appointment. For certain purposes, however, that jurisdiction may declare its law to be that the property shall pass according to the law of some other jurisdiction."

And in note 26 he further says:

"It happens that nearly all the cases on this point will square with the theory that the law of the *situs* of the personalty governs the exercise of the power by a residuary bequest."

If this be so, then the same reasons apply to a trust created by deed, and the law of the situs of the trust is equally applicable in such a case. There is a dearth of authority with respect to powers over personal estate created by deed. The case of Harlow et al. v. Duryea et al., 42 R. I. 234, is directly in point, however, and so is the case of Wilmington Trust Co. v. Wilmington Trust Co., 186 Atl. 903. The opinion of the Chancellor of the State of Delaware in the latter case is excellent, but is too long to quote. The substance of the reasoning in each case is that which we have just indicated.

As we have said, the situs of a trust created by will depends upon one factor—the domicile of the testator at the time of his death, which is the place of probate of his will. But the situs of a trust created by deed is not so easy to determine. It may depend on many factors, which are thus enumerated in Harlow v. Duryea, supra (p. 239) :

". . . the donor was domiciled in Massachusetts, the contract was made there, the trust fund was located in Massachusetts, and was to be administered in that state by a Massachusetts corporation."

All these factors are present in the case at bar, as the auditing judge notes. There is also present here the factor that the donee of the power was then a resident of the same State, though she afterward moved away. The same factors are enumerated in Russell v. Joys, 227 Mass. 263, though that case might have been rested on the consideration that the trust res was real estate. In the Wilmington case the whole trust was moved to Delaware, but it was held that the law of New York, under which it was created, followed it.

We, therefore, conclude that the situs of the trust was in Pennsylvania, and that it is the law of Pennsylvania which must determine the application of the will of the appointor, and the question whether a general bequest in such a will operates as an exercise of the power.

Exceptants press upon us section 24 of the Wills Act, supra, which provides:

"Nothing in this act contained shall be construed to apply to the disposition of personal estate by a testator whose domicile at the time of his death was out of this Commonwealth."

This section is taken from section 17 of the Wills Act of April 8, 1833, P. L. 249. A similar provision is found in section 25 of the Intestate Act of June 7, 1917, P. L. 429, which was taken from section 20 of the Intestate Act of April 8, 1833, P. L. 315. The Wills Act of 1833 contained nothing equivalent to section 11 of the Wills Act of 1917. That section is derived from the Act of June 4, 1879, P. L. 88. But now that section 11 is found in the same statute as section 24, the latter section appears to apply to it as well as to the rest of the statute. If it does, the statute is inconsistent with the previous Pennsylvania decisions, and with the law as generally understood. Like the auditing judge, we cannot believe that it was so intended. It is generally the law that the disposition of personal property is governed by the law of the domicile of the

owner, whether it be the law of transfers inter vivos or of wills or of intestacy. Both in the Wills Act and in the Intestate Act, the sections under discussion are understandable as statutory affirmations of this rule of law as it previously existed; and it would require more specific language to convey to us an intention to change the preëxisting law with reference to powers.

A further argument on behalf of the exceptions is that section 11 of the Wills Act of 1917, by its own terms, is not to be applied when the appointor indicates an intention to the contrary. It is said that an intention to the contrary is indicated by the express reference to the power which the appointor had under the will of Sarah Barton, and the failure to mention the power which she had under her own deed of trust. Safe Deposit & Trust Co. v. Friend, 201 Pa. 429, 431, is cited. In that case testatrix had a power of appointment over her mother's estate and her father's estate. By her will she gave "all the rest and residue of my property and estate, real and personal", to her two sons. By a codicil, executed the same day as her will, she provided:

"It is my intention in the foregoing will executed by me this day, and is my desire that the property and estate disposed of thereby shall include all my estate, real and personal, whether in my possession at the time of my decease, or held in trust for my use and benefit by trustees under the will of my father, James Wood, deceased."

The court held that the will and codicil did not operate as an exercise of the power to dispose of her mother's estate. The point of the Friend case is that an explanation of the will was made by a separate instrument, and therefore supposedly thoughtfully and deliberately made. In Provident Trust Co., Trustee, v. Scott et al., 335 Pa. 231, the testator expressly exercised one power of appointment in a separate paragraph of his will. By his residuary clause he made a general gift. It was held that a second power of ap-

pointment which was not mentioned was also exercised. In the present case testatrix referred to the one power of appointment in the same sentence as that in which she disposed of her residuary estate. This seems to us to be most like the Scott case, for in neither case does there appear the deliberate later exposition of something which had already been done and concluded. It is our opinion that a general gift prima facie comes within the affirmative provisions of section 11 of the Wills Act, and that any contrary intention should appear with reasonable clearness.

While the rule given by the Restatement, as we have said, is well settled, some if not all of the text writers (including Professor Beale) express the opinion that the rule is illogical, and the reasons unsatisfactory. Judge Goodrich in "Conflict of Laws" says (p. 461):

"There is strong reason for saying that the answer to the question should be determined by the law of the domicile of the donee of the power. Granted that the donee is the mere agent of the donor of the power, he has the option whether he shall exercise the power or not. Whether he does exercise the option is for him to determine, not the donor. And, where the intention is not clearly expressed, but must be found by implication, or, perhaps more accurately, fixed by construction of the will, the law to govern this construction should be that with regard to which the will was written, the testator's (donee's) domicile. The cases in this country, however, have fixed the law the other way; whether the will constitutes an exercise of the power is determined by the law of the domicile of the donor. This is true, regardless of the situs of the property or the residence of the trustee. A recent English decision seems also to support this result. The question involved seems rather the fixing of a rule of property than one of determining intention, and as a rule of property one conclusion would seem as satisfactory as the other, provided it is fixed with some degree of cer-

tainty. A will can be drawn to conform to either law after it is once known to what it must conform and make the exercise of the power valid."

Another rationalization which supports the view that the law of the domicile of the appointor is to control is the consideration that lies behind the statutes which make a general disposition of property operate also as the exercise of a power of appointment. That is, that the holder of such a power (particularly when it is created by herself) is likely to regard the property as her own. In Jackson's Estate, 337 Pa. 561, the Supreme Court said (p. 566) :

"She herself had created this trust fund with her own money. Except in a very technical legal sense, this fund was Mrs. Florence Baird Jackson's own property. No one but she had any right to its income and she alone had the power to dispose of it by will. It would be most unusual if she did not look upon this trust fund as her own, in the fullest sense of the word, to do with as she pleased."

And in Finn's Estate (No. 2), 18 Dist. R. 408, Judge Penrose said of the Act of 1879 (p. 409) :

"Our act is a literal transcript of the English wills act relating to the subject, as to which it is said, 'The intention of the legislature was to abolish the distinction between property and power:' Frankcombe v. Hayward, 9 Jurist, 344; Farwell on Powers, 183."

Our practice of awarding an appointed fund to the personal representatives of the appointor in order that the final distribution of the fund may be determined at the same time that the disposition of the appointor's individual estate is determined is consistent with this attitude toward appointed estates.

If a power of appointment is equivalent to property, the law of the appointor's domicile should apply to the effect and construction of his will as to personal estate wherever that personal estate may be situated, and of whatever sort—property or power—it may be, and no

embarrassment would then be occasioned by section 24 of the Wills Act, which would then conform to this view.

However, it seems to us that we are applying a rule of property and not construing the appointor's will. Like the rule in Shelley's case and the rule against remoteness, such a rule operates in spite of the appointor's actual intention or lack of intention. We therefore follow authority.

As we are of the opinion that the law of New Jersey has no bearing on this case, we have not discussed it. We note that the auditing judge came to no final conclusion on this subject. If it should appear that the law of New Jersey was material, it would be necessary to examine the law more thoroughly. (See Uniform Judicial Notice of Foreign Law Act of May 4, 1939, P. L. 42, 28 PS §291.)

The exceptions are dismissed and the adjudication is confirmed absolutely.